UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEREMY ELLIS,

    Plaintiff,

v.                                                     Case No: 8:22-cv-2508-KKM-CPT

CHAD CHRONISTER in
his official capacity as SHERIFF
of HILLSBOROUGH COUNTY,

    Defendant.
_____

## ORDER

Jeremy Ellis sued Chad Chronister, acting in his capacity as Sheriff of Hillsborough County, for claims related to Ellis's former employment at the Hillsborough County Sheriff's Office. Sec. Am. Compl. (Doc. 88). At trial, the Sheriff's Office moved for judgment as a matter of law on the issue of compensatory damages, which I took under advisement. The jury found that the Sheriff's Office retaliated against Ellis by terminating him after filing a charge of discrimination against the Sheriff's Office and awarded Ellis damages, both for lost wages and compensatory harm. Verdict (Doc. 101). The Sheriff's Office now renews its Rule 50

motion. Mot. JMOL (Doc. 113); *see also* Resp. (Doc. 116). Because Ellis offered sufficient evidence for a reasonable jury to award him compensatory damages, I deny the motion.

I. BACKGROUND

In October 2007, the Sheriff's Office hired Ellis as a community service officer. Tr. (Day One) (Doc. 110) 156-57. In 2010, the Sheriff's Office promoted Ellis to detention deputy, a position that he held until his termination in 2022. *Id.* 158, 161.

The relevant events for purposes of his retaliation claim began in December 2021, the date upon which Ellis filed an EEOC charge of discrimination. *Id.* 158-59. On January 9, 2022, the Sheriff's Office placed Ellis on a "fitness for duty" evaluation because of its "review of the [December 2021] charge of discrimination," and Ellis was subsequently "cleared fit for duty." Tr. (Day Two) (Doc. 111) 134, 136.

In May 2022, the Sheriff's Office placed Ellis under an "Internal Affairs investigation" based on charges of "falsification of [an] official document and public disparagement" premised on Ellis's EEOC complaint. Tr. (Day One) 162-63. After being notified of the investigation, the Sheriff's Office suspended Ellis without pay. *Id.* 164-65. Around this time, Ellis started having "sleeping issues," and he entered

an alcohol treatment facility because his drinking increased. *Id.* 175-76; Tr. (Day Two) 80-81.

In early July, the Sheriff's Office notified Ellis that he may be subject to termination because of the investigation of his December 2021 charge of discrimination. Tr. (Day Two) 141. About a week later, the Sheriff's Office held a "predetermination hearing" and recommended termination. *Id.* 140-44. Ellis appealed to the Complaint Review Board, which reviewed Ellis's file in late July and agreed with the recommendation to terminate Ellis. *Id.* 145-46. The last step in the Sheriff's Office's process was the Disciplinary Review Board. *Id.* 146. The Sheriff's Office decided to terminate Ellis on August 16, 2022, for "public disparagement and falsification on an official document." *Id.* 68; Tr. (Day One) 162-63.

In November 2022, Ellis sued the Sheriff's Office, *see* Compl. (Doc. 1), bringing claims under both Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-5(k), and the Florida Civil Rights Act (FCRA), § 760.10, Fla. Stat., *see* Am. Compl. (Doc. 16) ¶¶ 44-71. In particular, Ellis alleged that the Sheriff's Office retaliated against him by terminating him after he filed his December 2021 EEOC charge of discrimination. Sec. Am. Compl. ¶¶ 54-63.

3

Trial began on March 24, 2025, and Ellis testified that day. (Doc. 92). At the close of evidence, the Sheriff's Office moved under Rule 50 on the issue of compensatory damages, which I took under advisement. (Doc. 109). The jury returned a verdict for Ellis, awarding $125,000 in damages for lost wages and $125,000 in damages for compensatory, non-economic harm. Verdict. I permitted the Sheriff's Office to submit supplemental briefing on the Rule 50 motion regarding non-economic, compensatory damages. (Doc. 109).

The Sheriff's Office renews its motion under Rule 50, Mot. JMOL, and Ellis opposes, Resp.

## II.   LEGAL STANDARD

When considering a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50, the Court must determine "whether the evidence is 'legally sufficient to find for the party on that issue.' " *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (quoting FED. R. CIV. P. 50(a)(1)). In other words, judgment as a matter of law should be granted only if the evidence provides no basis "for a reasonable jury to find for that party on that issue." *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192 (11th Cir. 2004). The standard that applies to motions under Rule 50(a) "is precisely the same as the standard" that

applies to renewed motions for judgment as a matter of law under Rule 50(b). *Chaney*, 483 F.3d at 1227 (quoting 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2537 (2d ed. 1995)).

The Court "should review all of the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party." *Cleveland*, 369 F.3d at 1192–93 (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148–151 (2000)). In analyzing a renewed Rule 50 motion after a jury returns a verdict, the "court's sole consideration . . . is to assess whether that verdict is supported by sufficient evidence." *Chaney*, 483 F.3d at 1227. "It is the jury's task"—not a court's—"to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002) (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001)). A court must not second-guess the jury or substitute its judgment for that of the jury. *Id.* If reasonable jurors could reach different results, a court may not enter judgment as a matter of law. *Id.*

### III. ANALYSIS

Compensatory damages "need not be proven with a high degree of specificity," but "may be inferred from the circumstances as well as proved by the testimony."

5

*Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999) (quoting *Marable v. Walker*, 704 F.2d 1219, 1220 (11th Cir. 1983)).

"A plaintiff may be compensated for intangible, psychological injuries as well as financial, property, or physical harms." *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005). "The standard of review for awards of compensatory damages for intangible, emotional harms is 'deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses.'" *Ferrill*, 168 F.3d at 476 (quoting *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 937-38 (5th Cir. 1996)).

"[A] plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress." *Akouri*, 408 F.3d at 1345. "[C]onclusory statements" are not enough; the testimony must "sufficiently articulate[]" "demonstrable emotional distress." *Id.* (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996)). But "[e]videntiary shortcomings 'go more to the amount, rather than the fact, of damage.'" *Ferrill*, 168 F.3d at 476 (quoting *Marable*, 704 F.2d at 1220).

The Sheriff's Office moves for judgment as a matter of law for two reasons. First, the Sheriff's Office contends that Ellis failed to present evidence of harm

6

caused by his termination. Mot. JMOL at 3-8. Second, the Sheriff's Office argues that, even if Ellis presented some evidence of harm caused by the termination, the evidence is insufficient because it does not meet certain criteria. *Id.* at 8-10. I disagree for the reasons below.

### A. Ellis Presented Evidence of Emotional Harm Caused by His Termination

Ellis presented evidence of emotional harm caused by his termination that would permit a reasonable jury to award him compensatory damages. For example, when asked how "losing his job" "impacted [him] outside of the monetary impact," Ellis explained that "it was horrible" to have his "entire livelihood . . . taken away . . . to where [he] couldn't provide for [himself] and [his] family." Tr. (Day One) 174-75. For him, working at the Sheriff's Office was "[his] avenue to establish something for [him] and eventually for [his] family," and he "[did not] have a Plan B" because he planned to work at the Sheriff's Office until he retired. *Id.* 174. Ellis emphasized that he "would have never fathomed" that filing a charge of discrimination would lead him to be "treated like that." *Id.* 176. Ellis also opined that the "uncertainty" caused by the termination weighed on him. *Id.* 175.

When asked whether the termination affected his sleep, Ellis answered affirmatively and explained that he "was having issues . . . getting good sleep and

good rest, and [he] was treated for it." *Id.* As to his confidence, Ellis explained that losing his career "definitely" decreased his confidence because he was "alienated" from "people that [he had] known for over a decade." *Id.* 175-76. Ellis's testimony is "sufficiently articulated" for purposes of compensatory damages, and I must "defer[] to the fact finder." *Akouri*, 408 F.3d at 1345 (quoting *Price,* 93 F.3d at 1254); *Ferrill*, 168 F.3d at 476.

The Sheriff's Office contends that much of Ellis's testimony is conclusory and unsupported by "objective evidence," and that "any alleged distress that Ellis [] suffered predated the retaliatory act." Mot. JMOL at 5, 7. Although true that Ellis did not corroborate his testimony with other witnesses or documentary evidence, the law does not require him to do so, and the jury may assess his credibility in awarding compensatory damages. *See Marable*, 704 F.2d at 1220–21 (finding sufficient evidence to support compensatory damages when the plaintiff suffered no physical symptoms but testified that he was "embarrassed and humiliated" by the defendant's conduct); *Bogle v. McClure*, 332 F.3d 1347, 1358-59 (11th Cir. 2003) (declining to disturb the jury's non-economic damages award where evidence consisted solely of the plaintiffs' testimony that they suffered emotional harm, including embarrassment, anger, frustration, and betrayal, but no physical harm).

As explained above, Ellis testified about emotional effects caused by his termination. Tr. (Day One) 174-76 (answering affirmatively to a question about whether he experienced sleep issues as direct result from termination, that the experience of losing his job was "horrible," and that he felt "alienated"). Contrary to the Sheriff's Office's argument, Ellis's testimony is not insufficient because it is solely based on Ellis's "self-serving perception" without corroborating evidence, Mot. JMOL at 6–8, because "a plaintiff's testimony, standing alone, can support an award of compensatory damages," *Akouri*, 408 F.3d at 1345. In any case, "[e]videntiary shortcomings 'go more to the amount, rather than the fact, of damage.'" *Ferrill*, 168 F.3d at 476 (quoting *Marable*, 704 F.2d at 1220).

As for the causation of worsening symptoms related to alcoholism and depression, the jury could infer "from the circumstances" that those issues were made worse by the termination. *Ferrill*, 168 F.3d at 476 (quoting *Marable*, 704 F.2d at 1220). While describing the overall impact that his termination had on him, Ellis referenced his alcoholism and depression. Tr. (Day One) 175. And he continued outpatient treatment at an alcohol treatment facility for "a couple of months," indicating it might have continued through his termination. *Id.* 176. Because proof of compensatory damages may be "inferred from the circumstances" and "need not

9

be proven with a high degree of specificity," this evidence—when combined with Ellis's other testimony discussed above—supports a reasonable jury's finding of compensatory damages. *Ferrill*, 168 F.3d at 476 (quoting *Marable*, 704 F.2d at 1220).

Therefore, Ellis's testimony was sufficient evidence for a reasonable jury to award him non-economic, compensatory damages.

### B. The *Price* Factors Are Non-Binding Dicta

The Sheriff's Office contends that, even if Ellis presented evidence of harm, Ellis should not be awarded compensatory damages because his evidence failed to satisfy certain factors discussed in *Price v. City of Charlotte*, 93 F.3d 1241;[1] Mot. JMOL at 8–10 (citing *Akouri*, 408 F.3d at 1345 n.5).

The Sheriff's Office's argument does not persuade. The Eleventh Circuit's footnote citation to the *Price* factors in *Akouri* was not necessary to the holding of the case, *Akouri*, 408 F.3d at 1345 n.5, and therefore "is not binding on anyone for any purpose," *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1314–15 (11th Cir.

---

[1] In *Price*, the court compiled the following factors as guideposts for finders of fact to determine whether an award of non-economic, compensatory damages is warranted: "(1) whether the plaintiff lost the esteem of his/her peers; (2) whether the plaintiff suffered physical injury as a consequence of her emotional distress; (3) whether the plaintiff received psychological counseling or other medical treatment; (4) whether the plaintiff suffered a loss of income; (5) the degree of emotional distress; (6) the context of the events surrounding the emotional distress; (7) the evidence tending to corroborate the plaintiff's testimony; (8) the nexus between the challenged conduct and the emotional distress; and (9) any mitigating circumstances." 93 F.3d at 1254.

1998) (Carnes, J., concurring specially); *see Black v. United States*, 373 F.3d 1140, 1144 (11th Cir. 2004) (defining dicta as "a statement that neither constitutes the holding of a case, nor arises from a part of the opinion that is necessary to the holding of the case"); *see also Tucker v. Hous. Auth. of Birmingham Dist.*, 507 F. Supp. 2d 1240, 1277 (N.D. Ala. 2006) (declining to apply the *Price* factors when analyzing compensatory damages for purposes of a Rule 50 motion, concluding that they are non-binding), *aff'd*, 229 F. App'x 820 (11th Cir. 2007) (per curiam). In any event, arguments about the lack of "pecuniary loss, psychiatric disturbance, effect on social activity, or physical symptoms," which the *Price* factors address, "go more to the amount, rather than the fact, of damage." *Marable*, 704 F.2d at 1220; *see Tucker*, 507 F. Supp. 2d at 1277.

Ellis is therefore not required to establish the *Price* factors, and his evidence was sufficient for purposes of this motion.

## IV.   CONCLUSION

The evidence was "legally sufficient" for the jury to award Ellis non-economic, compensatory damages for the emotional harm caused by the retaliation. *Chaney*, 483 F.3d at 1227 (quoting FED. R. CIV. P. 50(a)(1)).

Accordingly, the Motion for Judgment as a Matter of Law (Doc. 113) is DENIED.

**ORDERED** in Tampa, Florida, on May 16, 2025.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge