UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEREMY ELLIS,

    Plaintiff,

v.                                                Case No: 8:22-cv-2508-KKM-CPT

CHAD CHRONISTER in
his official capacity as SHERIFF
of HILLSBOROUGH COUNTY,

    Defendant.
_____

## ORDER

A jury awarded Jeremy Ellis lost wages and compensatory damages for his retaliation claim against the Sheriff's Office, and Ellis moves for reinstatement and prejudgment interest on his award of back pay damages. For the reasons below, I grant in part and deny in part the motion.

### I.  BACKGROUND

Evidence at trial revealed deep and abiding distrust between the parties. Long before the particular EEOC complaint that initiated this lawsuit, Ellis encountered difficulties with his supervisors at the Sheriff's Office.

In 2016, Ellis filed his first of three EEOC complaints against the Sheriff's Office. Ellis alleged in the 2016 complaint that his supervisor was a "racist." Tr. (Day Two) (Doc. 111) 29. When asked during trial whether Ellis received any "discipline" for filing that charge, Ellis testified that he was "kicked off the team that [he] was on," which was a "preferred position," and sent back to "general population." *Id.* In 2016, Ellis also began using Family Medical Leave Act leave for a disability. *Id.* 82.

In September 2019, another incident occurred when Ellis's immediate supervisor overheard Ellis using profanity in the detention facility around inmates. Ellis was reported to a supervisor and accused of being disrespectful. *Id.* 97, 99. Although Ellis admitted to using profanity, he was frustrated by the situation and how his supervisor reprimanded him. In Ellis's view, it "could have been handled differently" had the supervisor not "spun it around" and made it seem as though he was being disrespectful. *Id.* 98.

Two years later, Ellis felt his direct supervisor, Cedric Battle, improperly evaluated him in a performance evaluation. *Id.* 118. Ellis emailed Battle with the subject line "I Was Failed," and expressed that he was "appalled" with his evaluation and disappointed that he had not gotten more guidance and assistance amid his "debilitated state of mind." *Id.* 117-21; Def.'s Ex. 12 (Doc. 115-3). Battle asked in

2

response whether Ellis was "well enough to carry out [his] duties and responsibilities." Tr. (Day Two) 121-22. In an email about the situation to the Sheriff's Office's second-in-command, titled "Hostile Work Environment," Ellis explained this response from Battle was "an immediate attack on [his] competency" and was "done in a manner to make a mockery of [his] situation and [to] make [him] appear unstable." *Id.* 122-24; Def.'s Ex. 13 (Doc. 115-4). Ellis continued that he "wouldn't wish this on anyone" and that his supervisor's comment was "inconsiderate and demeaning." Tr. (Day Two) 124.

In December 2021, Ellis filed his second EEOC complaint, this time alleging religious and disability discrimination, hostile work environment, and FMLA leave interference. Joint Ex. 6 (Doc. 114-1). Following that complaint, the Sheriff's Office initiated an internal investigation into Ellis based on statements made in the complaint. For its part, the Sheriff's Office believes Ellis to be untrustworthy, in large part because of inconsistencies that arose during the investigation. In the EEOC charge, Ellis listed that he was initially hired as a detention deputy, but he was in fact first hired as a community service officer. Tr. (Day One) (Doc. 110) 156-57; Joint Ex. 6 at 2. In an interview when asked about the error, Ellis explained that he had "a lot going on" and "just made an error," but subsequently attributed the error to alcohol

3

use. Tr. (Day Two) 19-20. Later in the investigation, Ellis explained his errors in the EEOC complaint were due to being "inebriated" when he submitted it, but then backed away during his testimony, commenting that he was "possibly" inebriated. *Id.* 49. Regarding his alcoholism, Ellis admitted at trial that he falsely completed a health form in January 2022 when indicating that he only had one drink a month. *Id.* 32 (admitting that statement "was not true"). As part of the Sheriff's Office investigation, Ellis also gave inconsistent versions about where he was staying, at one point stating that he was "couch surfing" at a friend's house but testifying at trial that he stayed in one place owned by a client of his wife's. *Id.* 61-64, 69. When cross examined about why he never mentioned the connection to his wife when asked during his deposition, Ellis testified at trial that he was trying to protect her by avoiding explaining who he was staying with during this transient period. *Id.* 66-67. Because of these discrepancies, the Sheriff's Office offered testimony from its decisionmakers that it views Ellis as untruthful and not capable of a position of trust within its law enforcement agency. *See generally* Tr. (Day Three) (Doc. 112).

In early July 2022, the Sheriff's Office notified Ellis that he may be subject to termination because of the investigation of his December 2021 charge of discrimination. Tr. (Day Two) 141. After completing the investigation, the Sheriff's

Office decided to terminate Ellis on August 16, 2022, for "public disparagement and falsification on an official document." *Id.* 68; Tr. (Day One) 162-63. Ellis then filed his third EEOC complaint alleging retaliation and brought this action against the Sheriff's Office.

After three days of trial, the jury returned a verdict for Ellis for retaliation, awarding him $125,000 in damages for lost wages and $125,000 in damages for compensatory, non-economic harm. (Doc. 101). Ellis now seeks reinstatement and prejudgment interest on his damages for lost wages. Mot. Misc. Rel. (Doc. 117). The Sheriff's Office opposes. Resp. (Doc. 118).

## II. LEGAL STANDARD

Under Title VII, a court may award a plaintiff equitable relief. 42 U.S.C. § 2000e-5(g). In fashioning equitable relief, the statute empowers a court to order "reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate." *Id.* § 2000e-5(g)(1). In wrongful discharge cases, reinstatement is presumptively the appropriate remedy. *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 619 (11th Cir. 2000). "[T]he basic purpose of Title VII relief is to 'make whole' victims of unlawful discrimination." *Nord v. U.S. Steel Corp.*,

758 F.2d 1462, 1470 (11th Cir. 1985) (quoting *Darnell v. City of Jasper*, 730 F.2d 653, 655 (11th Cir. 1984)).

But "extenuating circumstances" may justify a decision to forgo a reinstatement remedy. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1339 (11th Cir. 1999). Courts consider whether: (1) "discord and antagonisms between the parties would render reinstatement ineffective as a make-whole remedy"; (2) "the defendant's management had intimidated or threatened the plaintiff"; and (3) "the termination had harmed the plaintiff's emotional well-being." *W&O, Inc.*, 213 F.3d at 619 (cleaned up). Of course, "the presence of some hostility between parties, which is attendant to many lawsuits, should not normally preclude a plaintiff from receiving reinstatement." *Farley*, 197 F.3d at 1339. A court may exercise its discretion to decline to order reinstatement when circumstances render it "not feasible," or "impracticable or inadequate." *Farley*, 197 F.3d at 1339 (first quoting *Wilson v. S & L Acquisition Co., L.P.*, 940 F.2d 1429, 1438 (11th Cir. 1991) (per curiam); then quoting *Mt. Haskins v. City of Boaz*, 822 F.2d 1014, 1015 (11th Cir. 1987) (per curiam)). When a district court declines to order equitable relief, it must "carefully articulate" its reasons for doing so. *W&O, Inc.*, 213 F.3d at 619 (quoting *Farley*, 197 F.3d at 1339).

Additionally, Title VII "authorizes prejudgment interest," which is "an element of complete compensation," as "part of the backpay remedy." *Loeffler v. Frank*, 486 U.S. 549, 557-58 (1988) (quoting *West Virginia v. United States*, 479 U.S. 305, 310 (1987)). "An award of prejudgment interest adjusts the back pay award for inflation and reflects the present day value of income that should have been paid to the claimant in the past." *E.E.O.C. v. Joe's Stone Crab, Inc.*, 15 F. Supp. 2d 1364, 1379 (S.D. Fla. 1998). Like reinstatement or front pay, prejudgment interest is an equitable remedy that lies in the discretion of the court. *See Wilson*, 940 F.2d at 1439.

In deciding whether to award prejudgment interest, the court should consider whether the plaintiff mitigated his damages. *See id.* Mitigation requires "being reasonably diligent in seeking employment substantially equivalent" to the position from which the plaintiff was terminated. *Weatherly v. Ala. State Univ.*, 728 F.3d 1263, 1272 (11th Cir. 2013) (quoting *Smith v. Am. Serv. Co. of Atlanta*, 796 F.2d 1430, 1431 (11th Cir. 1986)). "Substantially equivalent employment" is employment that is virtually identical to the job from which the plaintiff was terminated. *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991). In making a mitigation argument, the employer has the burden of showing that the employee "did not make reasonable efforts to obtain work." *Id.* In other words, "the employer must show that

7

'comparable work was available and the claimant did not seek it out.' " *Id.* (quoting *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1139 (5th Cir. 1988)). If, though, "an employer proves that the employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment." *Id.* (quoting *Sellers*, 839 F.2d at 1139).

## III. ANALYSIS

### A. Reinstatement is Impracticable at the Sheriff's Office

Ellis's reinstatement is not feasible because of the history of abnormal hostility between the parties, Ellis's career-induced emotional harm, and the unique environment of a law enforcement agency. *See Farley*, 197 F.3d at 1339. Trial evidence displayed the tumultuous history between Ellis and the Sheriff's Office throughout his employment, beginning long before the December 2021 EEOC complaint. From 2016 through 2022, Ellis filed three separate charges of discrimination with the EEOC, and his career ultimately ended in a bitterly contested termination. Aside from his charges of discrimination, Ellis accused a supervisor of "fail[ing]" him, making "inconsiderate and demeaning" statements towards him, mocking his situation, "attack[ing] [his] competency," and creating a "hostile work environment." Tr. (Day Two) 117-125. When describing his work

8

situation, Ellis expressed that he was "appalled" and "wouldn't wish this on anyone." *Id.* These circumstances persisted across various working groups and supervisors to which Ellis was assigned.

Ellis's testimony also illuminated the emotional harm that he suffered during employment at the Sheriff's Office. Ellis attributed his depression and alcoholism to his career. *Id.* 27 (testifying that his "heavy drinking began in 2016 because of [his] career" and that his depression resulted from his career). Ellis's alcoholism only worsened during his employment. *Id.* 22 (explaining that in 2019, he consumed six drinks a day and eventually "entered detox" after "drinking [to] the point of passing out"). When asked how losing his career impacted him, he explained he was "alienated" from people that he had known at the Sheriff's Office for over a decade, particularly because, after he was suspended, the Sheriff's Office "sent [his] image to the entire agency . . . [and] plastered it on boards in the districts." Tr. (Day One) 175-76. Ellis testified that after his suspension and termination, he had "issues. . . getting good sleep and good rest" and went back to an alcohol treatment facility. *Id.*

From the Sheriff's Office's perspective, Ellis is dishonest and lacks credibility, traits necessary to meaningfully work within its law enforcement agency. Resp. 4-8. During the investigation into Ellis's December 2021 EEOC charge, the Sheriff's

Office determined inconsistencies in Ellis's statements about his alcohol use, the cause of certain errors that Ellis made in the charge, and his residency status. *Id.* at 5-7. These discrepancies center not on the core 2021 EEOC complaint's concerns about religious and disability discrimination, hostile work environment, or FMLA leave, Joint Ex. 6, but on peripheral matters that Ellis swore to when filing the EEOC complaint. As a result, the Sheriff's Office believes that Ellis lacks "honesty and integrity." Resp. 7.

Of course, an employer may not make blanket assertions to avoid reinstatement as a remedy in all Title VII cases, but two aspects set this case apart from that general rule. First, Ellis at trial did not dispute that he wavered in his explanations for the inconsistencies; instead, Ellis attributed his misstatements or omissions to matters such as embarrassment about his abuse of alcohol or a desire to avoid involving his wife or the like. Tr. (Day Two) 49, 66-67. In essence, Ellis admits that he was not truthful in all regards. Second, a law enforcement agency bears unique responsibilities towards the community, including those within its custody, and that kind of agency must trust its officers to function effectively. *Id.* 89; Resp. at 4-5; *see* Tr. (Day Three) 89; *cf. Oladeinde v. City of Birmingham*, 230 F.3d 1275,

10

1293 (11th Cir. 2000) ("In a law enforcement agency, there is a heightened need for order, loyalty, morale and harmony.").

Aside from any animosity, Ellis argues that reinstatement is the appropriate remedy for two reasons. First, he contends that many individuals at the Sheriff's Office who participated in this litigation are no longer employed at the Sheriff's Office. Mot. Misc. Rel. at 3. Second, to the extent that those individuals remain employed at the Sheriff's Office, Ellis could be assigned to a different position to limit his exposure with them. *Id.* at 3-4. I agree with the Sheriff's Office that reinstatement remains infeasible.

As an initial matter, the evidence contradicts Ellis's contention that "most of the individuals involved [in] [Ellis]'s case have either retired or left [the Sheriff's Office]'s employ." Mot. Misc. Rel. at 3. As the Sheriff's Office points out, Cedric Battle, who Ellis accused of creating a hostile work environment and who Ellis identified in his December 2021 charge of discrimination, is still employed at the Sheriff's Office. Joint Ex. 6; Resp. at 10 n.6. In fact, Battle was the Sheriff's Office representative who sat at counsel's table throughout the trial. Tr. (Day One) 32. Likewise, Chief Maurer, who testified at trial and played a role in Ellis's termination,

is now the Chief Deputy of Enforcement Operations at the Sheriff's Office. Tr. (Day Three) 20, 51; Resp. at 10 n.6.

Moreover, Ellis cites no binding case law supporting the proposition that reinstating the plaintiff in a different position alleviates the effects of preexisting animosity. Ellis also identifies no evidence that there are "many positions" open at the Sheriff's Office. Nor does Ellis's long history of conflict within the Sheriff's Office (as supported by the trial evidence) support the view that moving him to a different duty station, if one existed for which he is qualified, would ameliorate the problem. Ellis had various supervisors over the course of his tenure at the Sheriff's Office and filed three different EEOC complaints, each involving different allegations and different individuals. Tr. (Day Two) 149-50. Ellis also vocalized concerns in emails with supervisors and explained some of those circumstances in his testimony at trial.

The long history of discord between Ellis and the Sheriff's Office, including three charges of discrimination, instances when Ellis voiced his concerns with his treatment, emotional harm experienced by Ellis, and the Sheriff's Office's lack of trust in Ellis, constitutes an extenuating circumstance that make reinstatement an ineffective remedy. *Farley*, 197 F.3d at 1339 (holding that special circumstances

warranted declining to reinstate the plaintiff because of the plaintiff's "hostile work environment and his stress-induced disabilities" including alcoholism and depression); see *W&O, Inc.*, 213 F.3d at 619. In sum, Ellis had significant disagreements over the course of years with multiple individuals at the Sheriff's Office, and reinstatement in a law enforcement agency that—whether true or fair—finds Ellis untrustworthy would prove entirely unworkable. Ellis's reinstatement is thus not an effective form of relief.

### B. Prejudgment Interest

Although reinstatement is impracticable, the equities favor awarding Ellis prejudgment interest on the back pay damages that the jury awarded, consistent with Title VII's purpose to make victorious plaintiffs whole. See *Loeffler*, 486 U.S. at 557-58. The jury awarded Ellis $125,000 in lost wages, and adjusting the award to include prejudgment interest would simply "reflect[] the present day value of income that should have been paid to the claimant in the past." *Joe's Stone Crab, Inc.,* 15 F. Supp. 2d at 1379. The amount of interest is calculated by using "the IRS prime rates," which Ellis submits averaged at 7.16% from the day of Ellis's termination through the day final judgment is entered. *E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1512 (11th Cir. 1987). Based on this average rate, Ellis seeks $8,950.00

13

in prejudgment interest. Mot. Misc. Relief at 5. Although the Sheriff's Office contends that Ellis is not entitled to prejudgment interest, it does not contest the calculation of this figure.

The Sheriff's Office instead argues that Ellis's failure to mitigate the lost wages precludes any award of prejudgment interest. Resp. at 15. The Sheriff's Office fails to meet its burden. *See Weaver*, 922 F.2d at 1527. Ellis's testimony at trial shows that, at least for a couple years, he applied for employment at other law enforcement agencies. Ellis testified that, initially, he applied and received offers from Norton Lilly, Delta Airlines, and Crisis Center of Tampa Bay. Tr. (Day One) 167-168. Ellis accepted a position at Norton Lilly in November 2022, which was "the highest paying job" out of the offers that he received. *Id.* 168. Sometime in 2023 or 2024, Ellis applied to positions at the Manatee County Sheriff's Office, Pinellas County Sheriff's Office, and the Polk County Sheriff's Office Tr. (Day Two) 87-89. In the light of these efforts, the Sheriff's Office does not show that Ellis failed altogether to pursue comparable employment, at least for a time. *Weaver*, 922 F.2d at 1527; *see Richardson v. Tricom Pictures & Productions, Inc.*, 334 F. Supp. 2d 1303, 1317 (S.D. Fla. 2004) (awarding prejudgment interest after the Court resolved "ambiguities"

14

surrounding the plaintiff's mitigation efforts in favor of the plaintiff). For these reasons, Ellis is entitled to $8,950.00 in prejudgment interest.

## IV. CONCLUSION

The evidence shows that reinstatement would not be an effective "make-whole remedy" here. *W&O, Inc.*, 213 F.3d at 619 (quoting *Lewis v. Fed. Prison Indus., Inc.*, 953 F.2d 1277, 1280 (11th Cir. 1992)). Ellis is, however, entitled to prejudgment interest on his back pay damages award.

Accordingly, the following is **ORDERED**:

1. The Plaintiff's Motion for Miscellaneous Relief (Doc. 117) is **GRANTED in part and DENIED in part.**

2. The Clerk is directed to enter **JUDGMENT** for Jeremy Ellis, which shall read "**JUDGMENT** is entered in favor of Jeremy Ellis, and against Chad Chronister, acting in his capacity as Sheriff of Hillsborough County, in the amount of $258,950.00, which includes $125,000 in compensatory, non-economic damages, $125,000 in lost wages, and $8,950.00 in prejudgment interest. Post-judgment interest under 28 U.S.C. § 1961 shall run from today on the above amount until the day of payment."

15

3. The Clerk is directed to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on May 16, 2025.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge