# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JEREMY ELLIS,

     Plaintiff,

v.                              Case No: 8:22-cv-2508-KKM-CPT

CHAD CHRONISTER in
his official capacity as SHERIFF
of HILLSBOROUGH COUNTY,

     Defendant.

_____

## ORDER

    Jeremy Ellis sued Chad Chronister, acting in his capacity as Sheriff of Hillsborough County, for claims related to Ellis's former employment at the Hillsborough County Sheriff's Office. Sec. Am. Compl. (Doc. 88). The jury found that the Sheriff's Office retaliated against Ellis by terminating him after he filed a charge of discrimination against the Sheriff's Office and awarded Ellis damages, both for lost wages and compensatory harm. Verdict (Doc. 101).

At trial, the Sheriff's Office moved for judgment as a matter of law on the issue of causation, which I denied. (Doc. 108) The Sheriff's Office renews its Rule 50 motion, Mot. JMOL (Doc. 128), and Ellis opposes, Resp. (Doc. 136).

The Sheriff's Office also moves for a new trial on the basis that (1) the jury's verdict is contrary to the weight of the evidence; (2) the jury instructions are erroneous as to the retaliation claim; and (3) a miscarriage of justice would result if the verdict was allowed to stand. Mot. New Trial (Doc. 129). Lastly, the Sheriff's Office seeks a new trial or remittitur on the basis that the jury awarded Ellis excessive compensatory damages. *Id.* Ellis opposes. Resp. (137).

I deny both motions for the reasons below.

## I.    BACKGROUND

In October 2007, the Sheriff's Office hired Ellis as a community service officer. Tr. (Day One) (Doc. 110) at 156–57. In 2010, the Sheriff's Office promoted Ellis to detention deputy, a position that he held until his termination in 2022. *Id.* at 158, 161.

The relevant events for purposes of his retaliation claim began in December 2021 when Ellis filed an EEOC charge of discrimination. *Id.* 158–59. In January 2022, the Sheriff's Office placed Ellis on a "fitness for duty" evaluation because of its

"review of the [December 2021] charge of discrimination," and Ellis was subsequently "cleared fit for duty." Tr. (Day Two) (Doc. 111) at 134, 136.

In May 2022, premised on Ellis's EEOC complaint, the Sheriff's Office placed Ellis under an "Internal Affairs investigation" based on charges of "falsification of [an] official document and public disparagement." Tr. (Day One) at 162–63. After notifying Ellis of the investigation, the Sheriff's Office suspended him without pay. *Id.* at 163–65.

In early July, the Sheriff's Office notified Ellis that he may be subject to termination because of the investigation of his December 2021 charge of discrimination. Tr. (Day Two) at 141. About a week later, the Sheriff's Office held a "predetermination hearing" and recommended termination. *Id.* at 141–44. Ellis appealed to the Complaint Review Board, which recommended terminating Ellis, as did the Disciplinary Review Board. *Id.* at 40, 144–46; Tr. (Day Three) (Doc. 112) at 51, 93. The Sheriff's Office then terminated Ellis on August 16, 2022, for "public disparagement and falsification o[f] an official document." Tr. (Day Two) at 68.

In November 2022, Ellis sued the Sheriff's Office, *see* Compl. (Doc. 1), bringing claims under both Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), and the Florida Civil Rights Act (FCRA), § 760.10, Fla. Stat., *see* Am. Compl. (Doc. 16)

¶¶ 44-71. In particular, Ellis alleged that the Sheriff's Office retaliated against him by terminating him after he filed his December 2021 EEOC charge of discrimination. Sec. Am. Compl. ¶¶ 54-63. A jury returned a verdict for Ellis based on his retaliation claim, awarding $125,000 in damages for lost wages and $125,000 in damages for compensatory, non-economic harm. Verdict.

## II.   LEGAL STANDARDS

### A. Motion for Judgment as a Matter of Law

When considering a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50, a court must determine "whether the evidence is 'legally sufficient to find for the party on that issue.' " *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (quoting FED. R. CIV. P. 50(a)(1)). In other words, judgment as a matter of law should be granted only if the evidence provides no basis "for a reasonable jury to find for that party on that issue." *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192 (11th Cir. 2004). The standard that applies to motions under Rule 50(a) "is precisely the same as the standard" that applies to renewed motions for judgment as a matter of law under Rule 50(b). *Chaney*, 483 F.3d at 1227 (quoting 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2537 (2d ed. 1995)).

A court "should review all of the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party." *Cleveland*, 369 F.3d at 1192–93. In analyzing a renewed Rule 50 motion after a jury returns a verdict, the "court's sole consideration . . . is to assess whether that verdict is supported by sufficient evidence." *Chaney*, 483 F.3d at 1227. "It is the jury's task"—not a court's—"to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002) (quoting *Lipphardt*, 267 F.3d at 1186). A court must not second-guess the jury or substitute its judgment for that of the jury. *Id.* If reasonable jurors could reach different results, a court may not enter judgment as a matter of law. *Id.*

### B. Motion for a New Trial

For a new trial, the Sheriff's Office must show "the verdict 'was against the clear weight of the evidence or resulted in a miscarriage of justice.'" *Am. Builders Ins. Co. v. S.-Owners Ins. Co.*, 71 F.4th 847, 859 (11th Cir. 2023) (alterations and omission adopted)(quoting *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 948 (11th Cir. 2018)). "[I]t is critical that a judge does not merely substitute his judgment for that of the jury." *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 811 (11th Cir. 2020) (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183,

1186 (11th Cir. 2001)). Accordingly, entitlement to a new trial on evidentiary
grounds requires the verdict to be "against the great—not merely the greater—weight
of the evidence." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)
(quotation omitted).

### C. Remittitur

"[A] remittitur order reducing a jury's award to the outer limit of the proof is
the appropriate remedy where the jury's damage award exceeds the amount
established by the evidence." *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435,
1448 (11th Cir. 1985); *accord Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259,
1266 (11th Cir. 2008).

## III.    ANALYSIS

### A. Rule 50 Motion

The Sheriff's Office contends there is insufficient evidence for a jury to find
that Ellis's EEOC charge was the but-for cause of his termination. In the Sheriff's
Office's view, Ellis was terminated for two reasons. First, the Sheriff's Office fired
Ellis for what he alleged in his EEOC charge. Mot. JMOL at 6. Second, and as an
independent basis, the Sheriff's Office fired Ellis for being "untruthful during the
administrative investigation and subsequent disciplinary appeal process, and he was

not apologetic for his actions." *Id.* In pressing this argument, the Sheriff's Office asks the Court to substitute its judgment for that of the jury as to whether the first reason was the but-for reason for Ellis's termination. I cannot do that. The jury had sufficient evidence—and could make credibility determinations—to conclude that Ellis would not have been terminated absent the contents of his EEOC charge and that the Sheriff's Office would not have terminated him for his conduct in the follow-on investigation and disciplinary process. The Sheriff's Office's arguments to the contrary fail for the below reasons.

A Title VII retaliation claim requires "proof that the desire to retaliate was the but-for-cause of the challenged employment action." *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1340 (11th Cir. 2023) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); *see Nassar*, 570 U.S. at 360 ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m)."). In other words, a Title VII plaintiff must prove by a preponderance of the evidence that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360. It is always "the employee's burden . . . to prove that 'the desire to retaliate was the but-for cause' of

7

the challenged action." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1305 (11th Cir. 2023) (quoting *Nassar*, 570 U.S. at 352).

If an employer's proffered explanation for the adverse employment action is one that might motivate a reasonable employer, "an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). "[A] reason is not pretext for [retaliation] unless it is shown *both* that the reason was false, *and* that [retaliation] was the real reason." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (per curiam) internal citations omitted).

Under the "participation clause" of Title VII, it is unlawful for an employer to retaliate against an employee for making a charge, testifying, assisting, or otherwise participating "in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e–3(a); *see EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). Accordingly, "under the participation clause, an employer may not retaliate against an employee because the employee has made a charge." *Total Sys. Servs., Inc.*, 221 F.3d at 1174 (quotation omitted); *Pettway v. Am. Cast*

*Iron Pipe Co.*, 411 F.2d 998, 1007 (5th Cir. 1969).[1] Even "false statements made in the context of an EEOC charge (per the participation clause) are protected and cannot be grounds for dismissal or discipline." *Total Sys. Servs., Inc.*, 221 F.3d at 1175. The participation clause affords statements an "extreme level of protection for untruth" in the context of charges made before the EEOC. *Id.* But this protection does not extend to an employee's statements made in the context of the employer's internal investigation of discrimination. *Id.* at 1175–77.

At trial, there was ample evidence, both direct and circumstantial, for the jury to find that Ellis was retaliated against (in the form of termination) for what he included in the charge of discrimination. Direct evidence is "evidence, which if believed, proves existence of fact in issue without inference or presumption." *Wright v. Southland Corp.*, 187 F.3d 1287, 1293 (11th Cir. 1999) (quotation omitted). Indeed, Ellis's notice of termination is compelling direct evidence, stating that "[t]he REASON for the action [of dismissal] is" that Ellis filed "a Charge of Discrimination with the [EEOC] . . . [that] knowingly utilized false information to make the claim," which in turn violated "HCSO Rules and Regulations" 3.1.06,

---

[1] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to the close of business on September 30, 1981. 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

4.1.09, and 4.8.04. Not. of Discipline (Doc. 41-2) at 3; *see Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1190 (11th Cir. 1997) (explaining that the quintessential example of direct evidence is often "a management memorandum saying" that the employee was fired because of engaging in a protected activity). Title VII's participation clause bars this action by employers. *See Total Sys. Servs.*, 221 F.3d at 1175 ("[F]alse statements made in the context of an EEOC charge . . . are protected and cannot be grounds for dismissal or discipline.").

There is also circumstantial evidence suggesting that retaliation was the real reason for Ellis's termination. Only a couple of weeks after Ellis filed his EEOC charge, the Sheriff's Office's responded by subjecting Ellis to a "fitness for duty" evaluation. Tr. (Day Two) at 134. The documents implementing the evaluation state that it was in response to Ellis's EEOC charge, indicating some kind of disagreement or concern about what Ellis espoused in his charge. *Id.* at 134–35. A couple of months after that—and only one day after Ellis's 90-day window to file suit expired—the Sheriff's Office's initiated an internal affairs investigation, having charged Ellis with "falsification of [an] official document and public disparagement" because of what he wrote in the EEOC charge. Tr. (Day One) at 161–62. In the Sheriff's Office's own words, "the investigation was initiated to address untruthful

10

statements in [Ellis's] charge of discrimination." Mot. JMOL at 18–19. A reasonable

jury could infer that the timing of these events suggested that the EEOC charge by

Ellis motivated the Sheriff's Office's decision to terminate him.

Considering the direct and circumstantial evidence of retaliation, there was

sufficient evidence for a reasonable jury to conclude that retaliation was the but-for

reason for Ellis's termination. *See Chaney*, 483 F.3d at 1227.

The Sheriff's Office contends that Ellis failed to rebut evidence that Ellis's

conduct throughout the investigation and disciplinary proceeding was a but-for

reason for his termination and, as such, it is entitled to judgment as a matter of law.

According to the Sheriff's Office, because Ellis's termination was independently

reviewed by the Discipline Review Board and other removed decision-makers, the

causal link between any animus and Ellis's termination is severed. Mot. JMOL at 8–

9. The Sheriff's Office cites *Stimpson v. City of Tuscaloosa*, where the Eleventh

Circuit held that the plaintiff failed to show discriminatory animus in her employer's

decision to terminate her because her termination was reviewed by an independent

board that made a "fair and independent decision." 186 F.3d 1328, 1332 (11th Cir.

1999) (per curiam). This situation is similar to *Stimpson*, according to the Sheriff's

Office, because Chief Deputy Luscynski made the final decision to terminate Ellis

11

based on her independent review and concluded that Ellis lied during the investigation and was unapologetic for his actions. Mot. JMOL 9–11. Specifically, the Sheriff's Office points to Luscynski's testimony that her decision to terminate Ellis was based on the error of Ellis's hiring date in his charge and the following inconsistency in his testimony, her belief that Ellis lied about being inebriated when submitting the charge, and Ellis's "refus[al] to apologize and take responsibility for his actions." *Id.* at 11.

But unlike in *Stimpson*, the final decision maker's official decision merely repeated the unlawful reasoning for terminating Ellis. The official reason for Ellis's termination, written and signed by Luscynski, was that Ellis filed "a Charge of Discrimination with the [EEOC] . . . [that] knowingly utilized false information to make the claim," which in turn violated "HCSO Rules and Regulations" 3.1.06, 4.1.09, and 4.8.04. Not. of Discipline at 3. Again, terminating an employee for false statements made in an EEOC charge is unlawful under precedent. *Pettway*, 411 F.2d at 1007. And the explanation of the reasons for termination does not fully capture the other concerns that Chief Deputy Luscynski testified about, although she claims to have had those concerns when she made the final determination to terminate Ellis. *See generally* Not. of Discipline. Whether or not to believe

Luscynski's testimony is a credibility determination, which is the jury's province. *Shannon*, 292 F.3d at 715. In the light of this evidence, a reasonable jury could have concluded that the reasons the Sheriff's Office articulated for terminating Ellis outside of the content of the EEOC charge were not a but-for cause of his termination, and that retaliation was.

### B. Motion for a New Trial

The Sheriff's Office's argument for a new trial is twofold. First, it repeats the arguments made in its motion for judgment as a matter of law that there is insufficient evidence for the jury to have found for Ellis on the issue of causation. Second, the Sheriff's Office argues that the jury instructions regarding Ellis's retaliation claim were erroneous.

### 1. Evidence Regarding Causation

The Sheriff's Office expressly acknowledges that it "relies on, and incorporates," the arguments in its motion for judgment as a matter of law regarding causation. Mot. New Trial at 3 n.3. As I explained above, *supra* at 7, there was ample evidence for the jury to find that the Sheriff's Office terminated Ellis because of his EEOC charge, and therefore the verdict was not against the great weight of the evidence on this issue.

13

## 2. Jury Instructions

In deciding motions for a new trial on the basis of an allegedly erroneous jury instruction, a court considers whether the jury understood the issues or was misled. *Christopher v. Cutter Lab'ys*, 53 F.3d 1184, 1190–91 (11th Cir. 1995). Courts must examine jury instructions as a whole to determine whether they fairly and adequately addressed the issue and correctly stated the law. *Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533, 1538–39 (11th Cir. 1993). A district court has broad discretion in formulating jury instructions. *Id.*

The Sheriff's Office attempts to relitigate the scope of protection for an employee under the "participation clause," an issue that I addressed at summary judgment, in the jury instructions, and throughout trial. *See* Order on Mot. Summ. J. (Doc. 54) at 21–26; Tr. (Day One) at 8–12, 120–32, 178–87; Tr. (Day Three) at 126–28, 138–39. My view of what binding precedent requires on that matter has not changed, so I find no basis to grant the motion for a new trial.

The instructions on retaliation correctly applied binding precedent. Under *Pettway,* Title VII's participation clause protects an employee's right to file an EEOC charge, and an employer therefore cannot terminate an employee based on its determination that the allegations in the charge were incorrect. 411 F.2d at 1007; *see*

14

*Total Sys. Servs., Inc.*, 221 F.3d at 1175 (explaining participation clause activity is given an "extreme level of protection for untruth"); *Booth v. Pasco Cnty.*, 829 F. Supp. 2d 1180, 1200 (M.D. Fla. 2011) ("*Pettway* [] is binding authority in this circuit."). Accordingly, the jury was instructed that "[a]n employer may not terminate an employee because of anything written in an EEOC charge, regardless of whether an employer believes the content of the EEOC Charge is true or false." Jury Instructions (Doc. 103) (JIs) at 8.

The Sheriff's Office's first argues that the law itself is incorrect. The Sheriff's Office contends there is no textual basis for *Pettway*'s expansive protection of statements made in an EEOC charge. Mot. New Trial at 8–11. Those arguments are best directed to the en banc Eleventh Circuit, not this lower court.

The Sheriff's Office also argues that *Pettway* is inconsistent with post-*Nassar* caselaw on but-for causation, explaining that it "preclude[s] the full application of *Nassar*'s but-for test." *Id.* at 16. In essence, that *Nassar* abrogated *Pettway*. I disagree, for reasons I have explained in this case already. In *Nassar*, the Supreme Court held that causation in Title VII retaliation cases must be proved using the "but-for" test, which requires the fact-finder to remove the factor in question and determine whether the outcome would be the same. 570 U.S. at 362; *see Bostock v. Clayton*

*Cnty.*, 590 U.S. 644, 656 (2020). Accordingly, the jury was instructed that, as to causation, they must decide whether Ellis was terminated "because of" Ellis's protected activity—in other words, the jury must decide whether Ellis's "protected activity was the main reason" for his termination. JIs at 8.

The Sheriff's Office does not appear to argue that this was an erroneous jury instruction but protests the wisdom of *Pettway* and its distinction between participation and opposition clause activity. Mot. New Trial at 13–15. The Sheriff's Office cites several inapposite cases that concern Title VII's opposition clause, ignoring the underlying reasoning for the difference in protection under the clauses. *Id.* at 13–14; *see Total Sys. Servs.*, 221 F.3d at 1175 (explaining that the difference in levels of protection for the clauses is due to the fact that they protect entirely different activity). Further, the Sheriff's Office's argument ignores that the but-for test allows for the possibility of multiple but-for causes. *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1200 (11th Cir. 2024). By instructing the jury that one cause is unlawful, that does not forbid them from considering other lawful causes. *See Yelling*, 82 F.4th at 1338–39. The jury was instructed to determine whether retaliation was the "*main reason*," JIs at 8 (emphasis added), not whether it was the *only reason*. Therefore,

*Pettway*'s prohibition of terminating an employee based on the content of an EEOC charge does not preclude application of the but-for test in *Nassar*.

In sum, the jury instruction on retaliation was not erroneous.

### C. Remittitur

"[A] remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." *Goldstein*, 758 F.2d at 1448. To recover more than nominal damages for emotional distress, a plaintiff must prove actual injury. *Carey v. Piphus*, 435 U.S. 247, 263–64 (1978). Compensatory damages "need not be proven with a high degree of specificity," but "may be inferred from the circumstances as well as proved by the testimony." *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999) (quoting *Marable v. Walker*, 704 F.2d 1219, 1220 (11th Cir. 1983)).

"A plaintiff may be compensated for intangible, psychological injuries as well as financial, property, or physical harms." *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005). "The standard of review for awards of compensatory damages for intangible, emotional harms is 'deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the

demeanor of the witnesses.'" *Ferrill*, 168 F.3d at 476 (quoting *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 937–38 (5th Cir. 1996)).

"[A] plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress." *Akouri*, 408 F.3d at 1345. "[C]onclusory statements" are not enough; the testimony must "sufficiently articulate[]" "demonstrable emotional distress." *Id.* (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996)). But "[e]videntiary shortcomings 'go more to the amount, rather than the fact, of damage.'" *Ferrill*, 168 F.3d at 476 (quoting *Marable*, 704 F.2d at 1220).

The Sheriff's Office argues that the jury's compensatory damages award for Ellis in the amount of $125,000 is "clearly excessive" because Ellis's claim is "a simple garden-variety emotional distress claim." Mot. New Trial at 23. Specifically, the Sheriff's Office contends that Ellis's evidence was conclusory because he did not present any "corroborating evidence" of his injuries. *Id.* at 24.

As described in the order denying the Rule 50(b) motion regarding Ellis's entitlement to compensatory damages, Ellis testified about the myriad ways his termination affected him. (Doc. 119) at 7–10. Regarding emotional effects, Ellis explained at trial how "horrible" it was to have his livelihood taken away from him,

18

Tr. (Day One) at 174–75, and how the "uncertainty" caused by the termination weighed on him because he "[did not] have a Plan B," *id.* Moreover, the termination "definitely" decreased his confidence because he was "alienated" from "people that [he had] known for over a decade." *Id.* at 175–76. And there were physical effects that Ellis testified to as well. Ellis indicated that the termination impacted his sleep, explaining that he "was having issues . . . getting good sleep and good rest, and [he] was treated for it." *Id.* at 175. While describing the overall impact that his termination had on him, Ellis referenced his alcoholism and depression. *Id.* After his suspension, Ellis continued outpatient treatment at an alcohol treatment facility for "a couple [of] months," indicating it might have continued through his termination. *Id.* at 176.

Even without Ellis providing "corroborating evidence," "a plaintiff's testimony, standing alone, can support an award of compensatory damages." *Akouri*, 408 F.3d at 1345. Based on this evidence, I cannot find that "the verdict was against the clear weight of the evidence" or that there was "a miscarriage of justice.'" *Am. Builders Ins. Co.*, 71 F.4th at 859 (alteration adopted) (quoting *Chmielewski*, 890 F.3d at 948); *Davis v. Fla. Agency for Health Care Admin.*, 612 F. App'x 983, 987 (11th Cir. 2015) (denying motion for new trial or remittitur because the plaintiff's evidence

that she was embarrassed, suffered weight fluctuations, and lost friends was sufficient to support her award of damages).

Nor are Ellis's damages excessive in relation to the evidence. The amount Ellis received in compensatory damages appears reasonable in the light of the above testimony. *See, e.g.*, *Harris v. Corr. Corp. of Am.*, No. 3:00-CV-1297-J-12TEM, 2004 WL 7321381, at *7 (M.D. Fla. Mar. 10, 2004), *aff'd*, 139 F. App'x 156 (11th Cir. 2005) (declining to disturb jury's award of $150,000 in compensatory damages to plaintiff who was retaliated against under Title VII).

The Sheriff's Office cites several cases for support, but none of them require ruling that Ellis's damages are excessive. In *Stone v. GEICO General Insurance Co.*, for example, the court granted the defendant's motion for remittitur in part, finding that the jury award of $200,000 in compensatory damages for pain and suffering should be reduced to $50,000. No. 8:05-CV-636-T-30TBM, 2009 WL 3720954, at *6 (M.D. Fla. 2009). In reaching that conclusion, the court cited the factors in *Price*. *See id.* As I explained in the order denying the motion for judgment as a matter of law regarding compensatory damages, (Doc. 119) at 10–11, the Eleventh Circuit's citation to those factors in *Akouri* was not necessary to the holding of the case, 408 F.3d at 1345 n.5, and therefore I am not required by precedent to consider them. *See*

20

*McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1315 (11th Cir. 1998) (Carnes, J.,

concurring specially) ("[D]icta in our opinions is not binding on anyone for any

purpose.").

On the facts, *Stone* is distinguishable because there was evidence that the

plaintiff's emotional state improved only days after her termination, *see* 2009 WL

3720954 at *5—unlike here, where Ellis's depression and alcoholism only worsened.

*See* Tr. (Day One) at 174–76. *Akouri* too is distinguishable because there the plaintiff

"made no attempt to describe any kind of harm" from his termination, and in any

case, the court was not deciding whether to remit the damages but whether the

plaintiff was entitled to them at all. 408 F.3d at 1345. The Florida state cases, *see*

Mot. New Trial at 22–23, cited by the Sheriff's Office likewise lend no reason to

remit the jury's determination of compensatory damages in this Title VII case.

In sum, the evidence supported the jury's finding of $125,000 of compensatory

damages for Ellis.

## IV.    CONCLUSION

The Sheriff's Office is not entitled to judgment as a matter of law because the

evidence was "legally sufficient" for the jury to find that retaliation was the but-for

cause of Ellis's termination. *Chaney*, 483 F.3d at 1227.

21

The Sheriff's Office is also not entitled to a new trial. The jury's verdict was not against the great weight of the evidence, *Am. Builders Ins. Co.*, 71 F.4th at 859 (quoting *Chmielewski*, 890 F.3d at 948), nor were the jury instructions erroneous, *Christopher*, 53 F.3d at 1190–91.

Finally, because the jury's compensatory damages award does not "exceed[] the amount established by the evidence," *Goldstein,* 758 F.2d at 1448, the Sheriff's Office is not entitled to remittitur.

Accordingly, the following is **ORDERED**:

1. Defendant's Motion for Judgment as a Matter of Law (Doc. 128) is **DENIED.**

2. Defendant's Motion for New Trial or Remittitur (Doc. 129) is **DENIED.**

**ORDERED** in Tampa, Florida, on August 18, 2025.

Kathryn Kimball Mizelle
United States District Judge