UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEREMY ELLIS,

    Plaintiff,

v.                                             Case No: 8:22-cv-2508-KKM-CPT

CHAD CHRONISTER in
his official capacity as SHERIFF
of HILLSBOROUGH COUNTY,

    Defendant.
_____

## ORDER

A jury awarded Jeremy Ellis lost wages and compensatory damages for his retaliation claim against the Hillsborough County Sheriff's Office. After denying Ellis's motion for reinstatement, (Doc. 120), Ellis moved for front pay. Mot. for Front Pay (Doc. 127) (MFP). The Sheriff's Office opposes. Resp. (Doc. 132). After an evidentiary hearing, I deny the motion.

### I.    BACKGROUND

The Sheriff's Office terminated Ellis from his position as a detention deputy on August 16, 2022, after Ellis filed an EEOC charge alleging discrimination. *See* Order Mot. for New Trial (Doc. 141) at 2–4 (detailing Ellis's employment history

with, and termination by, the Sheriff's Office); Order JMOL (Doc. 119) at 1–4. Ellis sued the Sheriff's Office for retaliation under Title VII and the Florida Civil Rights Act. *See* Compl. (Doc. 1); Am. Compl. (Doc. 16) ¶¶ 44–71. After trial, the jury returned a verdict for Ellis for retaliation, awarding him $125,000 in damages for lost wages and $125,000 in damages for mental and emotional anguish. Verdict (Doc. 101).

Ellis then moved for equitable relief in the form of reinstatement. Mot. for Misc. Relief (Doc. 117). I denied the motion in part but later granted Ellis's request to submit additional briefing as to whether he is entitled to an award of front pay in the alternative. Order Mot. for Misc. Relief (Doc. 120); (Doc. 126). The issue has been fully briefed, and an evidentiary hearing was held on August 14, 2025. (Doc. 139).

At the hearing, Ellis testified that, after being terminated from his position as a detention deputy at the Sheriff's Office, he applied for and received offers from Norton Lilly, Delta Airlines, and Crisis Center of Tampa Bay. Tr. (Hearing) (Doc. 142) 3:24–4:9. Of his three offers, Ellis accepted the highest paying position at

Norton Lilly in November 2022. *Id.* Ellis remains employed by Norton Lilly today and earns an annual salary of $64,132.[1] Joint Ex. 13 (Doc. 114-4) at 23.

Although Ellis could not recall specific dates, he testified that in either 2023 or 2024 he also submitted online applications for detention deputy positions with the Hillsborough County Sheriff's Office, Manatee County Sheriff's Office, Pinellas County Sheriff's Office, and the Polk County Sheriff's Office. Tr. (Day Two) (Doc. 111) 87–89; Ellis Aff. (Doc. 127-1) ¶ 6; Tr. (Hearing) 4:13–23. Ellis testified that on "all four" applications he indicated that the Hillsborough County Sheriff's Office terminated him for public disparagement and falsification of an official document. Tr. (Hearing) 7:23–8:13, 25:2–15. According to Ellis's testimony, he did not receive an interview for any of the positions and ultimately received emails notifying him that his applications were denied. Ellis Aff. ¶ 6; Tr. (Hearing) 4:24–5:3. In Ellis's view, those law enforcement agencies would not hire an individual who "was terminated for the things [he] was terminated for." Tr. (Hearing) 26:4–8.

Other than the four sheriff's offices, Ellis has not applied for any public or private sector positions since November 2022 (when he accepted employment with

---

[1] Ellis has been employed at Norton Lilly continuously since November 2022, save for a "two-month break" around August 2023 when he was temporarily laid off because "the industry was kind of slow." Tr. (Day One) (Doc. 110) at 169.

Norton Lilly), including after the jury returned a verdict in his favor. *Id.* at 9:2–10:11, 39:9–20, 40:4–11. When asked about his job search efforts, Ellis stated that he is "always looking to make more money" and has an active Indeed.com account where he looks for positions matching his qualifications. *Id.* at 40:1–24. When pressed about the reason for failing to apply to any higher paying private sector positions since November 2022, Ellis testified that, based on his review of the job requirements, "I just didn't qualify." Tr. (Hearing) 40:7–11. As for renewed applications for public sector employment, Ellis explained that he does not presently qualify for any law enforcement or corrections positions because he is "technically a liability" based on his "credit score and . . . delinquent accounts which are the things that are ran during a background check." Tr. (Hearing) 10:4–11.

On the other hand, Ellis avers that he "would have remained employed with the HCSO and would have retired [from his] service only upon reaching 40 years of tenure" had he not been terminated. Ellis Aff. ¶ 3. He likewise contends that he "did not have a backup plan for [his] career or retirement." *Id.* ¶ 4. At the hearing, Ellis repeatedly testified that despite filing three EEOC complaints against the Sheriff's Office in the final six years of his tenure, he "didn't consider anything that was going on [in his] career to rise to the level of it interfering with [him] doing 40 years." Tr.

4

(Hearing) 15:19–24. Based on Ellis's statement that he would have worked another 26 years at the Sheriff's Office, he seeks $670,176 in front pay—the difference in his salary at Norton Lilly and what he would have been making in his previous position over the course of the next quarter century. MFP at 12.

## II. LEGAL STANDARD

"[T]he basic purpose of Title VII relief is to make whole victims of unlawful discrimination." *Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1470 (11th Cir. 1985) (internal quotation marks omitted) (alterations adopted) (quoting *Darnell v. City of Jasper*, 730 F.2d 653, 655 (11th Cir. 1984)). Accordingly, a court may "order such affirmative action as may be appropriate," including "reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g). "[P]revailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay," which "is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Weatherly v. Ala. State Univ.*, 728 F.3d 1263, 1272 (11th Cir. 2013) (quoting *EEOC v. W&O, Inc.*, 213 F.3d 600, 619 (11th Cir. 2000)); *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). When reinstatement is infeasible or ineffective, front pay may be awarded as an

alternate equitable remedy. *See Lewis v. Fed. Prison Indus., Inc.*, 953 F.2d 1277, 1280–81 (11th Cir. 1992).

Similarly, a court may award front pay "only when the other damages awarded will not fully compensate the plaintiff for his injury." *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1529 (11th Cir. 1991); *see Kennedy v. Ala. State Bd. of Educ.*, 78 F. Supp. 2d 1246, 1257 (M.D. Ala. 2000) (explaining that "the decision whether to award front pay draws upon classic equitable notions"). To that end, front pay "should make the claimant whole, not confer a windfall." *Armstrong v. Charlotte Cnty. Bd. of Cnty. Comm'rs*, 273 F. Supp. 2d 1312, 1317 (M.D. Fla. 2003) (quoting *EEOC v. Joe's Stone Crab, Inc.*, 15 F. Supp. 2d 1364, 1378 (S.D. Fla. 1998)). Front pay must be "calculated to terminate on the date a victim of a discrimination attains an *opportunity* to move to his 'rightful place,' " not necessarily when he succeeds in doing so. *Weaver*, 922 F.2d at 1529 (emphasis added) (quoting *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 358 (5th Cir. 1977)).

A plaintiff seeking front pay must also mitigate damages. *See id.* at 1529; *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1562 (11th Cir. 1988) ("The duty to mitigate damages by seeking employment elsewhere will . . . limit the amount of front pay available."). Mitigation requires that a plaintiff "be[] reasonably diligent in

6

seeking employment substantially equivalent" to the position from which he was terminated. *Weatherly*, 728 F.3d at 1272 (quoting *Smith v. Am. Serv. Co. of Atlanta*, 796 F.2d 1430, 1431 (11th Cir. 1986)). " 'Substantially equivalent employment' . . . affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status" as plaintiff's former position. *Weaver*, 922 F.2d at 1527. "Once comparable substitute employment has been found, [a plaintiff] faces certain obligations vis-a-vis the retention of that employment; namely, she must make 'reasonable and good faith efforts' to retain the job." *Reiner v. Family Ford, Inc.*, 146 F. Supp. 2d 1279, 1286 (M.D. Fla. 2001) (alterations adopted) (quoting *Sennello v. Reserve Life Ins. Co.*, 667 F. Supp. 1498, 1514 (S.D. Fla. 1987), *aff'd,* 872 F.2d 393 (11th Cir. 1989)). In other words, "[t]he duty to mitigate continues for a claim for front pay." *Hudson v. Chertoff*, 473 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007).

But an employer who seeks to limit the plaintiff's damages award under the failure-to-mitigate defense bears the burden of proving that evidence supports application of the defense. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1183 (11th Cir. 2010). To meet this burden, a defendant "must show that a claimant did not make reasonable efforts to obtain comparable work, or that comparable work was

7

available and the claimant did not seek it out." *Joe's Stone Crab*, 15 F. Supp. 2d at 1378. "[E]ven where the defendant fails to rebut plaintiff's evidence," a court "in the exercise of its duty to render an equitable award of damages for front pay, must also consider what is fair and reasonable under the circumstances." *Armstrong*, 273 F. Supp. 2d at 1317.

### III. ANALYSIS

Ellis asks for an award of front pay through his projected retirement at the Sheriff's Office in another 26 years—amounting to over half a million dollars. MFP at 12. Ellis contends that lengthy period of relief is warranted because getting a position in law enforcement is nearly "impossible" due to his reason for termination from the Sheriff's Office. *Id.* at 5–7; Ellis Aff. ¶ 7 ("It is very difficult to get hired in law enforcement now due to the sustained findings against me in the Internal Investigation due to my charge of discrimination.").

I held an evidentiary hearing, in part, because Ellis's affidavit and trial testimony on his efforts to obtain substantially equivalent positions—that he unsuccessfully applied to four sheriff's offices sometime in 2023 or 2024—lacked specificity. After considering all the evidence, the Sheriff's Office shows that Ellis has failed to exercise reasonable diligence in seeking substantially equivalent

employment and that Ellis's requested relief is highly speculative in the light of the many issues he encountered at the Sheriff's Office. And now, according to Ellis, an independent reason unrelated to his termination from the Sheriff's Office bars his reemployment in the corrections field. Because the equitable remedy of front pay is designed to compensate a plaintiff for the time required to allow him "an opportunity to move to his 'rightful place,'" *Weaver*, 922 F.2d at 1529 (quoting *James*, 559 F.2d at 358), but not to give a plaintiff a windfall, I decline to award Ellis front pay.

### A. Failure to Mitigate

Ellis has failed to "mitigate damages by being reasonably diligent in seeking employment substantially equivalent to the position [he] was denied." *Weatherly*, 728 F.3d at 1272 (quoting *Smith*, 796 F.2d at 1431). Here, Ellis's position at Norton Lilly is not "substantially equivalent" to his detention deputy position with the Sheriff's Office, as Ellis concedes it is a "non law enforcement position[]" that "does not come with the same level of pay as [his] position with HCSO." Ellis Aff. ¶ 8–9; *see Weaver*, 922 F.2d at 1527 (requiring similar job responsibilities and compensation). Nonethless, Ellis argues that he "engaged in consistent and good-faith efforts" to mitigate by unsuccessfully applying to four detention deputy postings in either 2023 or 2024. MFP. at 9–10. I disagree.

To be sure, reasonable diligence does not require Ellis to "search indefinitely" or "engage ceaselessly in a search for alternative employment," but he must make "genuine and sustained efforts toward that end" at least for "a reasonable period." *Sennello*, 667 F. Supp. at 1513; *see Nord*, 758 F.2d at 1471 (describing plaintiff's two-and-a-half-year job search as "reasonable"). He must do something more than voluntarily remove himself from the labor market. *See Miller v. Marsh*, 766 F.2d 490, 492 (11th Cir. 1985); *see also Hudson*, 473 F. Supp. 2d at 1297. Even if Ellis took appropriate steps before, through his recent inaction Ellis has effectively ended his candidacy for equivalent employment.

To start, Ellis's historical efforts—as best he can remember them—barely meet the reasonable diligence mark.[2] Ellis could not recall whether he applied to those positions in 2023 or 2024, Tr. (Hearing) 4:21–23, 24:11–18, 28:9–29:3, nor does the record contain paper or e-mail copies of the job postings, Ellis's applications, or rejection notifications, *see id.* at 10:17–11:4, 24:19–22, 29:4–17. Ellis also could not

---

[2] The Sheriff's Office objected to consideration of Ellis's testimony on this point, claiming that despite requests for production and Ellis's duty to supplement discovery pursuant to Federal Rules of Civil Procedure 26 and 37, he "ha[s] never . . . produce[d] anything when it comes to the application[s] that he actually submitted." Tr. (Hearing) 5:6–17. I overruled the objection and allowed Ellis's testimony, but, even considering it, decline to award him front pay.

10

recall how much the positions paid, although he testified that "they all pa[id] less" than his previous position. Tr. (Hearing) 6:17–23. Finally, there is no record whatsoever about the basis for his denial of those positions, only Ellis's speculation. Upon receiving rejection emails, Ellis did not write or call to inquire further as to why his applications were denied or how he could improve his application for future postings. At most, Ellis guesses that the neighboring county sheriff's offices denied his applications because he disclosed that the Hillsborough County Sheriff's Office terminated him for public disparagement and falsification of an official document. Tr. (Hearing) 24:23–25:15.

    Even assuming Ellis's theory is correct, he proves to be a different applicant now that a federal jury has concluded that the Hillsborough County Sheriff's Office unlawfully terminated him for filing an EEOC charge. Yet Ellis has not applied to a single new corrections position since that time nearly five months ago. In fact, Ellis has not applied to any position—public or private—since the Hillsborough, Manatee, Pinellas, and Polk County Sheriff's Offices denied his applications one year or two ago. Nor does Ellis's testimony evince that he has undertaken a robust job search effort. Instead, Ellis could not recall the job parameters he entered in his Indeed search, nor the specifics of his profile. Tr. (Hearing) 35:18–36:5. And when

11

questioned about his claim that he is "always looking to make more money," Ellis conceded that he "really couldn't tell you" when or how often he checks Indeed or other online sources. Tr. (Hearing) 40:23–41:7. And Ellis offered no other examples of job searches or applications. Reasonable diligence demands more.

Nor has Ellis's duty to mitigate expired. A plaintiff's obligation to find substantially equivalent employment is not frozen in time, lest it "confer a windfall" over and above what equity requires. *Armstrong*, 273 F. Supp. 2d at 1317 (quoting *Joe's Stone Crab*, 15 F. Supp. 2d. at 1378); *cf. Hudson*, 473 F. Supp. 2d at 1302 ("An award of front pay until retirement ignores the plaintiff's duty to mitigate damages and the district court's corresponding obligation to estimate the financial impact of future mitigation." (quoting *United Paperworkers Intern. Union Local 274 v. Champion Intern. Corp.*, 81 F.3d 798, 805 (8th Cir. 1996)). For example, in the parallel situation where a plaintiff obtains substantially equivalent employment, he must make "reasonable and good faith efforts" to *retain* the job. *Reiner*, 146 F. Supp. 2d at 1286 (quoting *Sennello*, 667 F. Supp. at 1513); *see id.* at 1288 (declining to award front pay where plaintiff was terminated from comparable employment "for absenteeism and substandard performance"). I see no basis to hold Ellis to a standard less than ongoing "reasonable and good faith effort[]" simply because he has not yet

12

landed substantially equivalent employment, especially where Ellis's suspected basis for rejection should no longer predominate his job applications. At bottom, Ellis's testimony about four online applications some unspecified time ago—and before a jury verdict in his favor—fails to satisfy his continuing duty to mitigate damages now that he has "attain[ed] an opportunity to move to his 'rightful place.' " *Weaver*, 922 F.2d at 1529 (quoting *James*, 559 F.2d at 358).

### B. Independent Bar

Alternatively, Ellis is not entitled to an award of front pay because, based on his testimony, an independent basis precludes him from obtaining substantially equivalent employment. Ellis testified that his low credit score and delinquent credit accounts make him "technically a liability" and categorically unqualified for comparable law enforcement or corrections positions. Tr. (Hearing) 10:4–11.

Although no case appears on all fours, Title VII caselaw establishes that reinstatement and front pay are inappropriate where a post hoc, independent basis renders a plaintiff ineligible for the position from which he was unlawfully discharged. Such bases come in two forms. First, "in cases in which an employee commits an act during employment that would [independently] lead to termination and the employer finds out about the act during the course of litigation, 'neither

13

reinstatement nor front pay is an appropriate remedy.'" *Wallace v. Dunn Constr. Co.*, 62 F.3d 374, 378 (11th Cir. 1995) (quoting *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 886 (1995)). And second, the legitimate "elimination of a plaintiff's former position prior to trial may preclude the receipt of front pay." *Muñoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1350 (11th Cir. 2000). In both circumstances, a plaintiff cannot work his old job—either because he's no longer qualified for it (due to misconduct) or because it no longer exists. So a court cannot reinstate him to the position nor award him front pay.

The same principle logically applies where a plaintiff no longer qualifies for substantially equivalent employment based on a fact unrelated to his unlawful termination. *Cf. Richardson v. Tricom Pictures & Prods., Inc.*, 334 F. Supp. 2d 1303, 1319 (S.D. Fla. 2004) (denying an award of front pay "because Richardson failed to produce competent evidence suggesting that her injuries have narrowed the range of economic opportunities available to her or that her injury has caused a diminution in her ability to earn a living." (cleaned up)), *aff'd*, 183 F. App'x 872 (11th Cir. 2006) (per curiam); *Baldwin v. City of Prichard*, No. CA 07-0789-C, 2009 WL 1211385, at *6 (S.D. Ala. May 4, 2009) (declining to award front pay until retirement where defendant had "a litany of legitimate reasons . . . not to renew Plaintiff's contract"

moving forward). Because front pay aims to "compensate a victim for the *continuing effects* of a defendant's [] actions," front pay has no role to pay when those "effects" cease to hinder a plaintiff's employment prospects. *Vroman v. Volusia Cnty.*, No. 606-CV-229-ORL-28DAB, 2009 WL 395501, at *1 (M.D. Fla. Feb. 17, 2009) (emphasis added), *aff'd* 364 F. App'x 568 (11th Cir. 2010) (per curiam).

Here, Ellis never suggested that his unlawful termination caused him to incur outstanding debts or realize a low credit score, two independent bases which he testified prevent him from obtaining substantially equivalent employment. Taking Ellis's testimony at face value, he cannot obtain an equivalent position as a detention deputy not because of "his unique circumstance as a terminated law enforcement officer," MFP at 11, but because of circumstances unrelated to the unlawful conduct at issue in this case. On those facts, a 26-year front pay award would do more than "make [Ellis] whole" for the Sheriff's Office retaliatory termination; it would confer a sizeable windfall until Ellis retires. *Armstrong*, 273 F. Supp. 2d at 1317.

To be clear, I do not adopt the view that the Sheriff's Office learned of Ellis's untruthfulness throughout the internal investigation and disciplinary proceedings for the first time during litigation and thus that conduct operates as a bar to front pay. The Sheriff's Office argued that those inconsistencies by Ellis were a but-for cause

15

at trial, and it was the jury's province to accept or reject that contention. Resp. at 4–10. For the reasons I explained in an earlier order, I do not disturb the jury's conclusion on that matter. *See* Order Mot. New Trial at 6–13. But the principle carries over to this new independent bar identified by Ellis, and therefore Ellis is not entitled to front pay.

### C. Equitable Considerations

Lastly, Ellis's claim for front pay fails because—even assuming Ellis had diligently sought other opportunities—it relies on the highly speculative proposition that Ellis would have continued working at the Sheriff's Office until retirement age despite myriad professional and interpersonal difficulties during his career there. Ellis's falsification of an official form and dishonesty throughout the internal investigation exacerbated those difficulties. So, although Ellis's dishonesty during the investigation of his EEOC complaint cannot serve as a post hoc but-for cause of his termination, Ellis's conduct nonetheless decreases the likelihood he would have continued working at the Sheriff's Office until retirement. And it tips the balance of the equities against him.

"[F]ront pay retains its equitable nature under Title VII" and is therefore subject to traditional principles of equity. *W&O, Inc.,* 213 F.3d at 619. As in

fashioning other forms of prospective equitable relief, "some risk of uncertainty" inheres and does not in and of itself preclude front pay. *Muñoz*, 223 F.3d at 1349 (quoting *Castle*, 837 F.2d at 1562). But such an award is " 'not intended to insure a plaintiff's future financial success,' " especially where a plaintiff's professional future is otherwise uncertain. *Reiner*, 146 F. Supp. 2d at 1290 (quoting *McKnight v. Gen. Motors Corp.*, 973 F.2d 1366, 1371 (7th Cir. 1992)); *see also Hudson*, 473 F. Supp. 2d at 1302 (rejecting front pay award until date of plaintiff's planned retirement).

Ellis's claim that he "would have remained employed with the HCSO and would have retired [from] service only upon reaching 40 years of tenure" strains credulity. Ellis Aff. ¶ 3. Not only is Ellis over a quarter century from retirement age, but his time at the Sheriff's Office was marked by grievances suggesting an untenable workplace environment moving forward. Most notably, in the last six years of Ellis's tenure he filed three separate charges of discrimination with the EEOC, each involving different allegations and different individuals. Tr. (Day Two) 29 (alleging that his supervisor was a "racist"); Joint Ex. 6 (Doc. 114-1) (alleging religious and disability discrimination, hostile work environment, and FMLA leave interference); Tr. (Hearing) 22:12–18; Am. Compl. ¶ 42 (alleging religious discrimination and retaliation for submitting an earlier EEOC charge). Each time Ellis lodged an

17

EEOC complaint, he was "put . . . in for a fit-for-duty psychological and physical" evaluation. Tr. (Day Two) 33–34. More telling still, Ellis was suspended without pay while the Sheriff's Office investigated his second EEOC charge. Tr. (Day One) 162–63. Around that time, Ellis began having "sleep issues," and entered an alcohol treatment facility because his drinking increased. *Id.* 175–76; Tr. (Day Two) 80–81; *see also id.* at 22 (claiming that he "began to drink alcohol daily due to depression I developed throughout my career"). Ultimately, Ellis was "appalled" by his supervisors and expressed that he "wouldn't wish this on anyone." *Id.* at 117–25; Def. Ex. 11 (Doc. 115-2) at 1; Def. Ex. 13 (Doc. 115-4) at 2. In the light of Ellis's persistent complaints about his work conditions and treatment by superiors, I cannot conclude that Ellis would have maintained his employment at the Sheriff's Office for another 26 years.

In addition to Ellis's grievances, evidence of his dishonesty also disfavors awarding equitable relief, even if it does not preclude it altogether. *See supra* at 15–16. As a matter of equity, an "employee's wrongdoing must be taken into account" in assessing whether to award front pay. *McKennon*, 513 U.S. at 361; *see Wallace*, 62 F.3d at 378 (extending *McKennon*'s principles to equitable remedies under Title VII); *see also Armstrong*, 273 F. Supp. 2d at 1317 (requiring a court to "consider

18

what is fair and reasonable under the circumstances."). Here, the Sheriff's Office points out that Ellis admitted to "falsifying" a health form, waffled on whether he was "inebriated" when submitting the EEOC charge, and gave inconsistent information about where he was staying during the administrative investigation. Resp. at 7–9. Even if the Sheriff's Office knew about those inconsistencies at the time, *see supra* at 15–16, Ellis's dishonest statements make it less likely that he would have remained employed at the Sheriff's Office indefinitely, especially where his superiors testified that they could no longer trust Ellis. *See, e.g.*, Tr. (Day Three) (Doc. 112) 55 (Chief Maurer: "There's no way we could ever trust Mr. Ellis."); *id.* at 98 (Chief Lusczynski: "[Ellis's] credibility moving forward would always be questioned. . . . I would not be likely to believe him since he's lied before.").

Considering the speculative nature of Ellis's request, evidence of his "wrongdoing" during the investigation, and "[b]ecause front pay is not intended to subsidize [the plaintiff] for the remainder of his working life and because an award through retirement would create a disincentive for him to advance in his career," I deny Ellis's request for a front pay award that would do just that. *Vroman*, 2009 WL 395501, at *2.

19

## IV. CONCLUSION

Despite a presumption in his favor, Ellis is not entitled to front pay. Because Ellis has not applied for similar law enforcement or corrections positions since 2023 or 2024, he has not exercised "reasonabl[e] diligen[ce] in seeking employment substantially equivalent" to the position from which he was terminated. *Weatherly*, 728 F.3d at 1272 (quoting *Smith*, 796 F.2d at 1431). Additionally, Ellis's poor credit score and delinquent accounts—not the stigma of his wrongful termination—render him categorically unqualified for equivalent employment even were he to seek it. *See Richardson*, 334 F. Supp. 2d at 1319. Finally, Ellis's request for 26 years of front pay rests on the improbable assumption that he would have remained employed by the Hillsborough County Sheriff's Office for another 26 years despite an increasingly contentious employee-employer relationship.

Accordingly, the Motion for Front Pay (Doc. 127) is **DENIED.**

**ORDERED** in Tampa, Florida, on August 27, 2025.

Kathryn Kimball Mizelle
United States District Judge

20