**FOR PUBLICATION**

In the
# United States Court of Appeals
For the Eleventh Circuit

---

No. 25-13267
Non-Argument Calendar

---

JEREMY ELLIS,

*Plaintiff-Appellee,*

*versus*

HILLSBOROUGH COUNTY SHERIFF'S OFFICE,

*Defendant,*

SHERIFF, HILLSBOROUGH COUNTY FLORIDA,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cv-02508-KKM-CPT

---

Before NEWSOM, BRASHER, and HULL, Circuit Judges.

PER CURIAM:

After his termination from the Hillsborough County, Florida, Sheriff's Office, plaintiff Jeremy Ellis brought many employment-related claims against the Sheriff of Hillsborough County (the "Sheriff") in his official capacity. Ultimately, only two claims went to trial—Ellis's retaliation claims brought under (1) Title VII of the Civil Rights Act of 1964 ("Title VII") and (2) Florida law. The jury rendered a verdict in favor of Ellis and awarded him damages. The Sheriff appealed.

On appeal, the Sheriff argues that the district court (1) abused its discretion in denying his motion for a new trial because the district court erred in instructing the jury that an employer may not terminate an employee for statements written in an EEOC charge even if they are false; and (2) erred in denying his renewed motion for judgment as a matter of law because Ellis presented insufficient evidence of causation. After careful review, we affirm.

## I. BACKGROUND

This case has a lengthy history. In 2007, the Hillsborough County Sheriff's Office ("HCSO") hired Ellis as a community service officer. In 2010, the HCSO promoted Ellis to detention deputy. Ellis held that position until his termination in August 2022.

In November 2022, Ellis filed his initial complaint. The procedural history includes (1) multiple amended complaints; (2) the district court's summary judgment order; (3) Ellis dropping and renumbering certain claims; and (4) the parties' agreement

about how to dispose of other claims. In March 2025, the case proceeded to trial on only Ellis's two retaliation claims against the Sheriff in his official capacity.

Both claims at trial alleged that the HCSO terminated Ellis in retaliation for filing his charges with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"). Ellis's EEOC and FCHR charges are contained in the same document, so we refer to them as the EEOC charge. Ellis's first claim asserted that the HCSO's actions violated Title VII, and his second claim asserted the HCSO's actions violated the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10.

We recite the trial evidence. Then we analyze the claims together because the same legal framework governs retaliation claims under both Title VII and the FCRA. *See Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 n.4 (11th Cir. 2010) ("Because retaliation claims under the FCRA are substantively similar to Title VII retaliation claims, we use the same analysis for both claims." (citing *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998))); *see also Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020) ("[B]ecause the FCRA is based on Title VII, decisions construing Title VII apply to the analysis of FCRA claims." (citing *Harper*, 139 F.3d at 1387, 1389-90)).

## II. TRIAL EVIDENCE

### A. Plaintiff Jeremy Ellis

Ellis testified first. In 2007, Ellis began working for the HCSO in a civilian position. In 2010, he became a detention officer after completing academy training.

#### 1. December 2021 EEOC Charge

In December 2021, Ellis filed his EEOC charge. Ellis's charge stated that the HCSO: (1) "discriminated against [him] and retaliated against [him] because of [his] disability and need for a reasonable accommodation"; and (2) "discriminated against [him] because of [his] religion and need for an accommodation" to wear a beard.

Ellis's EEOC charge further stated that he had "never had any issues at work until [he] received word that [he] was going to receive a substandard performance evaluation." Upon hearing this, Ellis told superiors that he had a "debilitated state of mind," causing him to struggle at work.

At trial, Ellis explained these statements in his EEOC charge by (1) clarifying that he meant he was distracted and could not complete goals due to a lack of focus; (2) acknowledging that he received feedback from supervisors; and (3) emphasizing that he had not been formally disciplined or investigated when he filed the December 2021 EEOC charge.

Ellis acknowledged that his EEOC charge mistakenly stated he started in 2007 as a detention officer (as opposed to 2010). Ellis attributed his mistake to a typographical error.

On February 7, 2022, Ellis received a notice of his right to sue from the EEOC. Because his work conditions had improved, Ellis did not file a lawsuit in the 90-day window.

2. May 2022 Notice of Investigation and Pay Suspension

Then, on May 10, 2022, the HCSO notified Ellis in writing that it had initiated an internal investigation and suspended him without pay in connection with his EEOC charge. The HCSO said that in his EEOC charge Ellis (1) falsified an official document (the EEOC charge); and (2) publicly disparaged the HCSO.

The HCSO's internal investigation revealed, *inter alia*, that Ellis had a drinking problem. Ellis attended a pre-disciplinary hearing in which he described his drinking and that it contributed to his error as to his 2007 start date as a detention officer. However, Ellis testified that (1) he never recalled going to work while under the influence of alcohol; and (2) he attended rehab for his drinking.

Embarrassed about being an alcoholic, Ellis was not forthcoming about his drinking problem. For example, during an interview with Detective Denbigh as part of the HCSO's 2022 internal investigation, Ellis did not tell Denbigh that his misstatement on the EEOC charge—regarding his 2007 start date as a detention officer—was likely also caused by his drinking. Ellis did not think he was being untruthful by not telling Denbigh about his drinking. Additionally, earlier in January 2022 (before the

internal investigation), Ellis had completed an HCSO health form because the HCSO ordered him to undergo a medical evaluation after filing his EEOC charge. On that HCSO form, Ellis untruthfully stated he had one alcoholic drink per month.

3. August 2022 Termination

In a written "Notice of Discipline Form," the HCSO terminated Ellis with an effective date of August 16, 2022. That Notice did not mention Ellis's drinking or alcoholism. Rather, the Notice explicitly stated that Ellis's false statements in his EEOC charge motivated the termination, along with his failure to give notice of a change of address. Because of the HCSO's focus on Ellis's EEOC charge, we quote its termination reasons in full, as follows:

> **The REASON for the action is:**
>
> On December 21, 2021, Detention Deputy Jeremy Ellis submitted under oath a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging he was discriminated against and retaliated against by [the HCSO] because of his disability, religion, and his need for a reasonable accommodation. The EEOC Charge of Discrimination publicly criticized [the HCSO] in writing, and Deputy Ellis knowingly utilized false information to make the claim. Deputy Ellis' administrative investigation revealed his date of hire as a detention deputy was falsely notated within the EEOC Charge of Discrimination. Deputy Ellis had seven performance appraisals and evaluations

> documenting issues at work, refuting his claim of never having issues at work. Deputy Ellis admitted those statements to the EEOC were not true. No evidence was found that Deputy Ellis informed [the HCSO] about a disability or requested an accommodation for a disability. Additionally, there was no evidence that Deputy Ellis was discriminated against or retaliated against due to a disability. During Deputy Ellis' administrative interview, he advised that he considered his ADHD a disability but did not request a reasonable accommodation for his disability other than "needing to go home" when he requested and being allowed to do so. The administrative investigation also revealed Deputy Ellis failed to notify [the HCSO] of a change of address from his listed residential address. Deputy Ellis' actions caused him to violate HCSO Rules and Regulations 3.1.06 (Notification of Correct Address and Phone Number), 4.1.09 (Public Disparagement), and 4.8.04 (Falsification of Official Documents). As a result of Deputy Ellis' administrative investigation, he was dismissed from [the HCSO] effective August 16, 2022.

Ellis appealed his termination to the Sheriff's Complaint Review Board, which consisted of two individuals selected by Ellis, two individuals selected by the HCSO, and one individual selected by the four other board members. The Complaint Review Board agreed to terminate Ellis.

After the Complaint Review Board's decision, Ellis's termination was reviewed by the Sheriff's Disciplinary Review Board, consisting of two colonels in the HCSO. Ellis gave a statement to the Disciplinary Review Board, in which he stated he was "inebriated" when he wrote his EEOC charge. By "inebriated," Ellis said he meant "[t]ipsy, alcohol in my system . . . [i]nebriated, drunk, tipsy, they're all the same."

Ellis then appealed his termination to the Sheriff or, in the Sheriff's absence or by his designation, the Chief Deputy. Ellis met with then-Chief Deputy Donna Lusczynski, who sustained Ellis's termination.

Ellis rested, presenting no other witnesses.

**B. Chief Deputy Joseph Maurer**

The defendant Sheriff first presented testimony from Joseph Maurer, the current Chief Deputy of Enforcement Operations in the HCSO. At the time of the relevant events, Chief Deputy Maurer was a colonel serving under then-Chief Deputy Lusczynski.

Chief Deputy Maurer testified that Ellis violated the HCSO's rules (1) against publicly disparaging the HCSO by including three false statements of fact in his EEOC charge; and (2) that employees needed to provide their correct address, which Ellis had not done.

The first rule violation was the most serious. Chief Deputy Maurer explained that integrity and honesty were important values for the HCSO, and untruthfulness in any form was a serious

matter. Maurer testified that he cared whether Ellis was truthful, not that he had filed an EEOC charge.

The investigatory and disciplinary process raised further concerns. Chief Deputy Maurer was concerned by Ellis's comments at the pre-disciplinary hearing regarding his drinking, depression, and trouble remembering dates. During that hearing, Ellis had an aggressive demeanor and was not remorseful or apologetic. Moreover, Maurer testified that Ellis lied multiple times throughout the internal investigation, causing Maurer to lose trust in him. Maurer added: "there's no recovering from that."

That said, Chief Deputy Maurer testified about issues relating to the integrity of the investigation and disciplinary process itself. First, HCSO policy requires a detective to "interview all identifiable witnesses before they interview the accused." To that end, Detective Denbigh signed her report confirming she had not violated anyone's rights guaranteed under Florida law, including that she had interviewed every identifiable witness. But that confirmation was not true because Denbigh did not interview the two HCSO employees identified as problematic in Ellis's EEOC charge.

Second, Chief Deputy Maurer did not initiate an investigation into Denbigh for making false statements because he had not felt that Denbigh had been untruthful. Third, Denbigh did not investigate whether the individuals Ellis complained of in his EEOC charge were acting in a discriminatory manner and focused on only Ellis's inaccuracies in his EEOC charge. Fourth, as to the

second rule violation, Maurer testified he never recommended terminating anyone else for not updating their address.

**C. Chief Deputy Donna Lusczynski**

The Sheriff next presented this testimony from former Chief Deputy Donna Lusczynski, who sustained Ellis's termination from the HCSO.

After reviewing the internal investigation, Chief Deputy Lusczynski was not concerned that Ellis had filed an EEOC charge, as that was "an employee's right." She believed that Ellis had violated HCSO policy by lying in the EEOC charge.

Particularly, Chief Deputy Lusczynski was concerned that Ellis lied about three material facts: (1) when he became a sworn detention officer (in 2010, not 2007); (2) that he had no performance issues; and (3) that he had a disability. Lusczynski thought Ellis lied about when he became a sworn officer to lengthen his tenure and did not believe it was a simple mistake because the significance of being sworn-in was memorable.

Chief Deputy Lusczynski also testified that Ellis made inconsistent statements during the HCSO's internal investigation, such as not telling Detective Denbigh that his drinking may have caused his mistaken date in the EEOC charge.

Chief Deputy Lusczynski was bothered by Ellis not acknowledging his untruthfulness and by his lack of remorse or apology at the Disciplinary Review Board hearing. Lusczynski was also concerned that Ellis stated he was intoxicated the day he filed

the EEOC charge and that he worked the same day. On the other hand, none of Ellis's supervisors ever told Lusczynski that Ellis had reported to work inebriated.

Chief Deputy Lusczynski also gave testimony that corroborated Chief Deputy Maurer's testimony about the issues with the investigation. First, Lusczynski was identified in Ellis's EEOC charge but was never interviewed by Detective Denbigh. Second, Denbigh was never investigated for making untruthful statements. Third, Lusczynski never recommended an HCSO employee for termination because they failed to update their address.

Chief Deputy Lusczynski did not think that Ellis's conduct was curable such that he could work for the HCSO again because Ellis's credibility would be questionable going forward.

The Sheriff rested his defense. Ellis presented no further evidence.

**D. Rule 50 Motions for Judgment as a Matter of Law**

After the Sheriff rested, plaintiff Ellis made a Rule 50 motion for judgment in his favor as a matter of law. *See* Fed. R. Civ. P. 50. Ellis argued that he established that his termination was unlawful retaliation because the HCSO's Notice admitted the HCSO terminated Ellis because of statements in his EEOC charge. The district court reserved ruling on Ellis's motion. Later, after the jury found in Ellis's favor, the district court denied Ellis's Rule 50 motion as moot.

The Sheriff also made his own Rule 50 motion for judgment in his favor. The Sheriff argued that Ellis had not established but-for causation between his EEOC charge and termination because the HCSO also terminated Ellis due to (1) inconsistent and false statements he made during the HCSO's own internal investigation; and (2) Ellis's drinking.[1] The district court denied the Sheriff's Rule 50 motion, finding that there was sufficient evidence for the jury to find but-for causation.

**E. Jury Instructions**

In discussing the jury instructions, the Sheriff objected to the district court's proposed instruction that the law does not permit an employer to consider the contents of an employee's EEOC charge in deciding to terminate the employee. Ellis agreed with the district court's characterization that this was a correct statement of law under our binding precedent in *Pettway v. Am. Cast Iron Pipe Co.*, 411 F.2d 998 (5th Cir. 1969).[2] Subsequently, the district court gave this jury instruction as to causation, stating an employer may not terminate an employee for false statements in an EEOC charge, as follows:

> For the third element, you must decide whether [the HCSO] terminated Mr. Ellis because of Mr. Ellis'

[1] The Sheriff made these arguments when opposing Ellis's Rule 50 motion, then readopted them to make his own Rule 50 motion.

[2] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

> protected activity. Put another way, you must decide whether Mr. Ellis' protected activity was the main reason for [the HCSO]'s decision.
>
> To determine that [the HCSO] took an adverse employment action because of Mr. Ellis' protected activity, you must first find that, all the things remaining the same, [the HCSO] would not have taken the action had Mr. Ellis not engaged in the protected activity.
>
> [The Sheriff] claims that [the HCSO] did not terminate Mr. Ellis because of Mr. Ellis' EEOC charge and that it terminated Mr. Ellis for violating [HCSO] policies based on statements by Mr. Ellis in his Charge and statements and conduct by Mr. Ellis during [the HCSO]'s internal review process.
>
> *An employer may not terminate an employee because of anything written in an EEOC charge, regardless of whether an employer believes the content of the EEOC charge is true or false*. But an employer may terminate an employee for any other reason, good or bad, fair or unfair, and you may not substitute your own judgment for [the HCSO]'s judgment, even if you do not agree with it.

(Emphasis added).

**F. Verdict**

The jury (1) found that the Sheriff terminated and retaliated against Ellis because of his EEOC charge; and (2) awarded him $125,000 for lost wages and $125,000 for mental and emotional

anguish. The district court entered final judgment for these sums against the Sheriff in his official capacity.

After the jury's verdict, the Sheriff renewed his Rule 50 motion for judgment as a matter of law. In the alternative, the Sheriff moved for a new trial or remittitur under Rule 59. *See* Fed. R. Civ. P. 59. The district court denied both motions. The Sheriff timely appealed.

## III. SHERIFF'S RULE 59 MOTION BASED ON *PETTWAY* JURY INSTRUCTION

On appeal, the Sheriff contends that the district court erroneously relied on *Pettway* to instruct the jury as follows: "An employer may not terminate an employee because of anything written in an EEOC charge, regardless of whether an employer believes the content of the EEOC charge is true or false." The Sheriff argues the district court erred in denying his Rule 59 motion because of this erroneous jury instruction. The Sheriff asserts that subsequent Supreme Court precedent abrogated *Pettway* and its progeny.

After review, we conclude that *Pettway* remains binding Circuit precedent. Therefore, the district court properly relied on *Pettway* to instruct the jury.[3] We review our prior-panel precedent rule and then *Pettway*.

---

[3] We review a district court's jury instructions for an abuse of discretion as to the wording employed, but review jury instructions *de novo* to decide whether

### A. The Prior-Panel Precedent Rule

Under this Court's prior-panel precedent rule, a prior panel's holding is binding unless it has been overruled or abrogated by the Supreme Court or this Court sitting en banc. *Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*, 59 F.4th 1158, 1164 (11th Cir. 2023). As such, "[w]e are bound to apply the precedent of a prior panel even if we are convinced that the prior panel is mistaken about the proper analysis." *United States v. Emmanuel*, 565 F.3d 1324, 1332 (11th Cir. 2009). This includes overlooking or misinterpreting Supreme Court precedent. *Sabal Trail Transmission, LLC*, 59 F.4th at 1174 ("[U]nder our prior-precedent rule, even if our Court 'overlooked' a reason—including a Supreme Court case—we remain bound by our prior precedent."); *United States v. Fritts*, 841 F.3d 937, 942 (11th Cir. 2016) ("[T]here is never an exception carved out for overlooked or misinterpreted Supreme Court precedent.").

Accordingly, this Court has "categorically reject[ed] any exception to the prior panel precedent rule based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time." *Smith v. GTE Corp.*, 236 F.3d 1292, 1303 (11th Cir. 2001).

To abrogate a prior-panel precedent, a subsequent Supreme Court decision must "be clearly on point and clearly contrary" to

---

the instructions misstated the law or misled the jury. *Caradigm USA LLC v. PruittHealth, Inc.*, 964 F.3d 1259, 1277 n.12 (11th Cir. 2020).

that precedent. *TL90108 LLC v. Ford*, 147 F.4th 1351, 1359 (11th Cir. 2025) (quoting *Edwards v. U.S. Att'y Gen.*, 97 F.4th 725, 743 (11th Cir. 2024)). This Court's prior precedent remains binding "[i]f the Supreme Court 'never discussed our precedent and did not otherwise comment on the precise issue before the prior panel.'" *Id.* at 1359-60 (quoting *Jennings v. Sec'y, Fla. Dep't of Corr.*, 108 F.4th 1299, 1304 (11th Cir. 2024)). "[T]he Supreme Court decision 'must demolish and eviscerate each of'" the prior decision's rationales, and "merely weaken[ing] the holding of an earlier panel is not sufficient to abrogate that holding." *Id.* at 1360 (quoting *Jennings*, 108 F.4th at 1304).

With this background, we turn to *Pettway* and the Supreme Court's decision in *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013), on which the Sheriff relies.

**B. *Pettway* and *Nassar***

In the 1969 *Pettway* decision, the former Fifth Circuit held that an employer could not terminate an employee for allegedly false statements made in an EEOC charge. *Pettway*, 411 F.2d at 1007. The Court specifically concluded that an "[e]mployee can suffer no detriment by virtue of having filed charges with EEOC which also contain false or malicious statements. By utilizing EEOC machinery he is exercising a protected right." *Id.* In *Pettway*, the employer candidly admitted to discharging its employee because the employee made "false and malicious accusations" about the employer in a letter to the EEOC, which the Court considered an EEOC charge. *Id.* at 1002, 1007-08. Causation was

not an issue in *Pettway*. The Court ordered that relief be granted to the employee because the employer admitted terminating its employee based on the EEOC charge. *See id.* at 1007-08.

Nonetheless, the Sheriff contends that *Pettway* "predates the development of modern Title VII jurisprudence," and has "been implicitly overruled and/or [is] not consistent with Title VII's statutory text or purpose." The Sheriff relies mainly on *Nassar* where the Supreme Court faced the task of "defin[ing] the proper standard of causation for Title VII retaliation claims." *Nassar*, 570 U.S. at 346. In particular, the *Nassar* issue was whether such retaliation claims should be analyzed under a motivating factor standard or a but-for causation standard. *Id.* at 343, 346-47. After thoroughly analyzing the statute, the Supreme Court concluded that but-for causation is the proper standard for Title VII retaliation claims. *Id.* at 351-360, 362-63.

The Sheriff argues that the Supreme Court's requirement of but-for causation in *Nassar* directly conflicts with *Pettway*. *Nassar*, however, did not discuss *Pettway* or the "precise issue" of the scope of protection afforded to those filing an EEOC charge such that it could be said that *Nassar* "demolish[ed]" *Pettway*'s rationale. *See TL90108 LLC*, 147 F.4th at 1359-60; *Nassar*, 570 U.S. at 351-63; *Pettway*, 411 F.2d at 1007.

Undoubtedly, many aspects of Title VII litigation changed in the forty-four years between *Pettway* and *Nassar*, but *Pettway* was not premised on the lack of but-for causation, later required by *Nassar*. *See Nassar*, 570 U.S. at 352; *Pettway*, 411 F.2d at 1007.

*Pettway* instead answered the narrower and *materially different* question of whether an employer may fire an employee for making "false" or "malicious" statements in an EEOC charge. *See Pettway*, 411 F.2d at 1007.

We thus reject the Sheriff's attempt at stretching *Nassar* to disregard *Pettway*. "Obedience to a Supreme Court decision is one thing, extrapolating from its implications a holding on an issue that was not before that Court in order to upend settled circuit law is another thing." *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 475 F.3d 1228, 1230 (11th Cir. 2007).

Because the Sheriff does not cite any en banc decision of this Court or decision from the Supreme Court that is clearly on point and contrary to *Pettway*, it remains binding precedent in this Circuit. The prior-panel precedent rule precludes a panel of this Court from overturning *Pettway*, and it has not been undermined to the point of abrogation.

The Sheriff raises no other issues with the jury instructions. The district court therefore did not abuse its discretion when it properly relied on *Pettway* to instruct the jury.

## IV. SHERIFF'S RULE 50 MOTION BASED ON INSUFFICIENT EVIDENCE

Next, the Sheriff argues that the district court erred in denying his renewed Rule 50 motion because (1) the Sheriff articulated legitimate, non-retaliatory reasons—Ellis's drinking and lying during the HCSO's internal investigation—for terminating

Ellis's employment; and (2) Ellis failed to carry his burden to show these reasons were pretextual and not the cause of his termination.

As table setting, we discuss Rule 50, the elements of a retaliation claim, and how the Sheriff's pretext arguments under *McDonnell Douglas*[4] play no role in post-trial motions. We then analyze whether the trial evidence sufficiently created a jury issue as to Ellis's retaliation claims.

## A. Rule 50 Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a) states that, if a party has been fully heard on an issue during a jury trial and the court determines that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on the issue, then the court may grant a motion for judgment as a matter of law against the party on the claim or defense. Fed. R. Civ. P. 50(a)(1). Rule 50(b) provides that a party may renew a denied Rule 50(a) motion after trial. *Id.* R. 50(b).[5]

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[5] This Court reviews *de novo* the denial of a Rule 50 motion for judgment as a matter of law, viewing the evidence in the light most favorable to the nonmovant. *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 5 F.4th 1235, 1242 (11th Cir. 2021). "Rule 50 motions should be granted 'only when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action.'" *Id.* (quoting *Howard v. Walgreen Co.*, 605 F.3d 1239, 1242 (11th Cir. 2010)).

**B. Elements of Ellis's Retaliation Claims**

Title VII has opposition and participation clauses. The anti-retaliation provision of Title VII provides that it "shall be an unlawful employment practice for an employer to discriminate against any of [its] employees" *because* an employee (1) "has opposed any practice made an unlawful employment practice" under Title VII (the "opposition clause"); or (2) "*has made a charge*, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" *under Title VII* (the "participation clause"). 42 U.S.C. § 2000e-3(a) (emphasis added). This case concerns the participation clause.

The participation "clause protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC." *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). Even false statements made in the context of an EEOC charge are protected under the participation clause.[6] *Pettway*, 411 F.2d at 1007 (holding that an employer could not fire an employee for statements in his EEOC charge, despite the employer believing they were false or malicious); *see Total Sys. Servs.*, 221 F.3d at 1175 (stating that although "false statements made in the context of an EEOC charge (per the participation

[6] In his renewed Rule 50 motion in the district court, the Sheriff "respectfully disagree[d]" with the district court's *Pettway* jury instruction but did "not challenge that instruction for purposes of this motion." The Sheriff did object to the *Pettway* jury instruction at trial, and his Rule 59 motion for a new trial was based in part on the *Pettway* jury instruction.

clause) are protected and cannot be grounds for dismissal, . . . this extreme level of protection for untruth is not afforded to false statements made under the opposition clause" (citing *Pettway*, 411 F.2d at 1007, then citing *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) ("Accusations made in the context of charges before the [EEOC] are protected by statute; charges made outside of that context are made at the accuser's peril."))).

Further, to establish a retaliation claim, the plaintiff must show that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). "Claims of retaliation can be supported with either direct or circumstantial evidence." *Lapham v. Walgreen Co.*, 88 F.4th 879, 889 (11th Cir. 2023).

Here, filing an EEOC charge is unquestionably a statutorily protected activity. It is also undisputed that Ellis's termination was an adverse employment action. The only Rule 50 issue is thus causation.

To establish causation in a Title VII retaliation case, the plaintiff must show that "the desire to retaliate was the but-for cause of the challenged employment action." *Booth v. Pasco Cnty.*, 757 F.3d 1198, 1207 (11th Cir. 2014) (quoting *Nassar*, 570 U.S. at 352). "Stated another way, a plaintiff must prove that had []he not complained, []he would not have been fired." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018).

"Often, events have multiple but-for causes." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020). Even so, "a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision." *Id.* If the illicit motive "was one but-for cause of that decision, that is enough to trigger the law." *Id.* Thus, if the defendant presents legitimate, nonretaliatory reasons for the adverse action, "[t]he crucial question" for the jury is not whether these proffered reasons for the adverse action "were well-grounded but whether they actually motivated the [employer]." *Booth*, 757 F.3d at 1207.

**C. The Sheriff's Pretext Arguments**

The Sheriff couches his appellate arguments in the *McDonnell Douglas* analytical framework. However, in Title VII retaliation cases, this framework (including its pretext-burden shifting) "plays no role at trial" and is "inapplicable on post-trial motions." *Ismael v. Roundtree*, 161 F.4th 752, 760 (11th Cir. 2025). That is because "the entire evidentiary picture goes further than pretext" and "focusing on the defendant's justification can lead both litigants and the court down a rabbit hole that obfuscates the plaintiff's affirmative claim." *Id.* at 761-62 (citation modified).

Instead, "we ask whether the defendant intentionally retaliated against the plaintiff because of the plaintiff's protected activity." *Id.* at 762 (citing *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310 (11th Cir. 2023)). We therefore focus our attention on the whole trial record to determine whether Ellis presented sufficient evidence for a reasonable jury to find that the Sheriff

retaliated against him for filing his EEOC charge that had false statements.

### D. Analysis of Trial Evidence

Considering the trial evidence in the light most favorable to Ellis, we conclude that sufficient evidence created a jury question as to whether Ellis's EEOC charge was the but-for cause of his termination.

For starters, there was direct evidence of but-for causation. The HCSO's Notice stated that Ellis was terminated because his "EEOC Charge of Discrimination publicly criticized [the HCSO] in writing, and Deputy Ellis knowingly utilized false information to make the claim." And under our Circuit precedent, an employer may not terminate an employee because of anything written in their EEOC charge regardless of whether the employer believes the charge is false. *Pettway*, 411 F.2d at 1007. The Sheriff's admission that Ellis's termination was based on his EEOC charge thus establishes the requisite causal link.

Chief Deputy Lusczynski's and Chief Deputy Maurer's testimonies further support the causal link by showing that Ellis's EEOC charge was the driving force behind beginning the HCSO's internal investigation and eventually terminating Ellis.

We recognize that at trial the Sheriff articulated and presented evidence of legitimate, nonretaliatory reasons for terminating Ellis. Specifically, the Sheriff relies on Chief Deputy Lusczynski's trial testimony to argue that the HCSO terminated

Ellis because (1) he lied about a litany of facts in the HCSO's own internal investigation and (2) it had concerns about his drinking.[7]

The jury's task, however, was not to decide whether these proffered reasons for Ellis's termination "were well-grounded." *Booth*, 757 F.3d at 1207. Rather, the jury's job was to determine whether those reasons "actually motivated" the HCSO to terminate Ellis. *Id.* In that regard, the HCSO did not mention those reasons in its August 2022 Notice terminating Ellis. Lusczynski even testified that no one had expressed concern about Ellis's drinking before the investigation. The jury therefore had a sufficient evidentiary basis to find that while these may have been "well-grounded" reasons to terminate Ellis, they did not "actually motivate[]" the HCSO to terminate Ellis. *Id.*

At bottom, there was sufficient evidence for a reasonable jury to find that (1) Ellis's EEOC charge was a but-for cause of his termination; and (2) thus, the HCSO's termination of Ellis was in retaliation for filing his EEOC charge. We therefore affirm the district court's denial of the Sheriff's renewed Rule 50 motion.

---

[7] The Sheriff does not argue that Ellis's failure to notify the HCSO of a change in his address independently served as grounds for his termination. In fact, the HCSO's Internal Affairs case file for Ellis noted that failure to provide a correct address was only "subject to reprimand." That is consistent with trial testimony from both Chief Deputy Lusczynski and Chief Deputy Maurer that they never recommended an HCSO employee for termination solely because they failed to update their address.

## V. CONCLUSION

For these reasons, we affirm the district court's denial of the Sheriff's renewed Rule 50 motion for judgment as a matter of law and his Rule 59 motion for a new trial based on the jury instructions.

**AFFIRMED.**

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 25, 2026

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 25-13267-DD
Case Style: Jeremy Ellis v. Sheriff, Hillsborough County Florida
District Court Docket No: 8:22-cv-02508-KKM-CPT

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. The Court has proposed amending 11th Cir. R. 40-1 (Number of Copies) to no longer require paper copies of a petition for panel rehearing or a petition for rehearing en banc. Based on the proposed amendment, other than an original petition filed in paper by a non-electronic filer, **parties are asked not to submit any paper copies** of a petition for panel rehearing or a petition for rehearing en banc.

Costs
Each party to bear its own costs.

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion